LAWRENCE J. SEMENZA, III, ESQ., Bar No. 7174
Email: ljs@skrlawyers.com
CHRISTOPHER D. KIRCHER, ESQ., Bar No. 11176
Email: cdk@skrlawyers.com
JARROD L. RICKARD, ESQ., Bar No. 10203
Email: jlr@skrlawyers.com
SEMENZA KIRCHER RICKARD
10161 Park Run Drive, Suite 150
Las Vegas, Nevada 89145
Telephone:  (702) 835-6803
Facsimile:   (702) 920-8669

LUANNE SACKS (*pro hac vice* application to be filed)
Email: lsacks@srclaw.com
ROBERT B. BADER (*pro hac vice* application to be filed)
Email: rbader@srclaw.com
SACKS, RICKETTS & CASE LLP
177 Post Street, Suite 650
San Francisco, CA 94108
Telephone:  (415)549-0580
Facsimile:   (415)549-0640

*Attorneys for Defendants*
*Station Casinos LLC and Red Rock Resorts, Inc.*

Semenza, Kircher, Rickard
10161 Park Run Drive, Suite 150
Las Vegas, Nevada 89145
Telephone: (702) 835-6803

## UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| ARTHUR F. COYNE, on behalf of himself and all others similarly situated,<br><br>            Plaintiff,<br><br>      vs.<br><br>STATION CASINOS LLC., a Nevada Limited Liability Company, RED ROCK RESORTS, INC., a Delaware corporation, and DOES 1 through 50, inclusive,<br>            Defendants. | Case No.:<br><br>**DEFENDANTS' NOTICE OF REMOVAL OF CIVIL ACTION (FEDERAL QUESTION JURISDICTION, 28 U.S.C. § 1331)**<br><br>[Removed from District Court, Clark County, Nevada, Case No. A-16-746526-C] |

## <u>NOTICE OF REMOVAL</u>

TO THE CLERK OF THE ABOVE-ENTITLED COURT, THE PARTIES, AND ALL

ATTORNEYS OF RECORD:

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Semenza, Kircher, Rickard
10161 Park Run Drive, Suite 150
Las Vegas, Nevada 89145
Telephone: (702) 835-6803

PLEASE TAKE NOTICE THAT pursuant to 28 U.S.C. Sections 1441(a) and 1446, Defendants Station Casinos LLC ("Station Casinos") and Red Rock Resorts, Inc. ("Red Rock") (collectively, "Defendants") hereby remove to this Court the state court action described below, pending as case number A-16-746526-C in the District Court, Clark County, Nevada ("State Court Action").  The following statement is submitted pursuant to 28 U.S.C. Section 1446(a):

## I.   FACTUAL BACKGROUND

1.   On or about November 10, 2016, Plaintiff Arthur F. Coyne ("Plaintiff") commenced the State Court Action by filing a Collective and Class Action Complaint ("Complaint") in the District Court, Clark County, Nevada, in the case entitled as *Arthur F. Coyne, Plaintiff v. Station Casinos LLC, Red Rock Resorts, Inc., and Does 1 through 20, Defendants*.  Defendants first received notice of the State Court Action on December 1, 2016 when they were served with Plaintiff's Complaint, together with the Summons, Civil Case Cover Sheet, and Demand for Jury Trial.  A copy of the above-listed documents is attached hereto as **Exhibit A**.

2.   Station Casinos is a Nevada limited liability company with its principal place of business in Las Vegas, Nevada.

3.   Red Rock is a Delaware corporation with its principal place of business in Las Vegas, Nevada.

4.   Aside from the documents contained in **Exhibit A**, Defendants have not been served with any other process, pleadings, or orders in the State Court Action.

5.   The Complaint (filed on November 10, 2016) and Plaintiff's Demand for Jury Trial (filed on November 15, 2016) are the only two documents that have been filed in the State Court Action.  No proceedings have taken place or been scheduled in the State Court Action.

## II.   GROUNDS FOR FEDERAL JURISDICTION AND REMOVAL

6.   This Court possesses original jurisdiction in all cases arising under the laws of the United States.  *See* 28 U.S.C. § 1331.  Plaintiff's Fair Labor Standards Act ("FLSA") claims in the Complaint (Counts I and II) arise under federal law.  Complaint, ¶¶ 28-37.

7.   Specifically, Plaintiff alleges that Defendants are employers engaged in commerce under the FLSA and violated 29 U.S.C. Section 201, *et seq*. of the FLSA by failing to pay

Semenza, Kircher, Rickard
10161 Park Run Drive, Suite 150
Las Vegas, Nevada 89145
Telephone: (702) 835-6803

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Plaintiff and other similarly situated employees for time spent attending mandatory pre-shift meetings. Complaint, ¶¶ 7-8, 31. Plaintiff also claims that Defendants violated 29 U.S.C Section 207 by failing to pay Plaintiff and other similarly situated individuals overtime wages for time spent attending mandatory pre-shift meetings. *Id.* at ¶ 36.

8.      Because some of Plaintiff's claims against Defendants arise under federal law, the State Court Action may be removed to this Court under 28 U.S.C. Section 1441(a). *See Breuer v. Jim's Concrete of Brevard, Inc.*, 538 U.S. 691, 694-98 (2003) (holding that case filed in state court alleging violations of the FLSA was properly removed to federal court under 28 U.S.C. Section 1441).

9.      The Court has supplemental jurisdiction over the remainder of Plaintiff's claims against Defendants because they arise from a common nucleus of operative facts concerning the alleged failure to compensate Plaintiff for time spent attending mandatory pre-shift meetings. *See* 29 U.S.C. § 1367.

## III.   COMPLIANCE WITH REMOVAL STATUTE

10.     **Removal to Proper Court**.  Assignment to this Court is proper because it is part of the "district and division" embracing the place where the State Court Action was filed –Clark County, Nevada. *See* 28 U.S.C. § 1446(a).

11.     **Removal is Timely**.  This Notice of Removal is timely under 28 U.S.C. Section 1446(b) because it is being filed within thirty (30) days of Defendants' receipt of the Complaint through service of process, which occurred on December 1, 2016.

12.     **Pleadings and Process**.  Pursuant to 28 U.S.C. Section 1446(a), attached hereto as **Exhibit A** is a copy of the docket and all process, pleadings, and orders served on Defendants in the State Court Action.

13.     **Notice**. Pursuant to 28 U.S.C. Section 1446(d), Defendants will file with the Clerk of the District Court, Clark County, Nevada, a Notice of Filing of Notice of Removal.  A copy of the Notice of Filing of Notice of Removal, without exhibit, is attached hereto as **Exhibit B**.

14.     **Other Defendants**. All named defendants consent to removal of the action.  The Doe defendants are disregarded for the purposes of removal. *See* 28 U.S.C. § 1444 (only

Semenza, Kircher, Rickard
10161 Park Run Drive, Suite 150
Las Vegas, Nevada 89145
Telephone: (702) 835-6803

"defendants who have been properly joined and served must join in or consent to the removal of the action").

15.     **Proper Signature**.  Counsel for Defendants hereby certifies, pursuant to 28 U.S.C. Section 1446(a), that this Notice of Removal filed on behalf of Defendants is signed pursuant to Rule 11 of the Federal Rules of Civil Procedure.

16.     Based upon the foregoing, this Court has jurisdiction over this matter pursuant to 28 U.S.C. Section 1331, and the claims may be removed to this Court under 28 U.S.C. Section 1441(a).

## IV.     REQUEST   FOR   ADDITIONAL   ARGUMENTS   AND   EVIDENCE,   IF NECESSARY

17.     In the event that Plaintiff files a request to remand, or the Court considers remand *sua sponte*, Defendants respectfully request the opportunity to submit additional argument or evidence in support of removal.

WHEREFORE, this action should proceed in the United States District Court for the District of Nevada, as an action properly removed thereto.

DATED this 21st day of December, 2016.

SEMENZA KIRCHER RICKARD

*/s/ Lawrence J. Semenza, III*
Lawrence J. Semenza, III, Bar No. 7174
Christopher D. Kircher, Bar No. 11176
Jarrod L. Rickard, Esq., Bar No. 10203
10161 Park Run Dr., Ste. 150
Las Vegas, Nevada 89145

Luanne Sacks (*pro hac vice* application to be filed)
Robert B. Bader (*pro hac vice* application to be filed)
SACKS, RICKETTS & CASE LLP
177 Post Street, Suite 650
San Francisco, CA 94108

*Attorneys for Defendants*
*Station Casinos LLC and Red Rock Resorts, Inc.*

Semenza, Kircher, Rickard
10161 Park Run Drive, Suite 150
Las Vegas, Nevada 89145
Telephone: (702) 835-6803

## CERTIFICATE OF SERVICE

Pursuant to Special Order #109, I am employed by the law firm of SEMENZA KIRCHER RICKARD in Clark County. I am over the age of 18 and not a party to this action. My business address is 10161 Park Run Dr., Ste. 150, Las Vegas, Nevada 89145.

On the 21st day of December, 2016, I served the document(s), described as:

**NOTICE OF REMOVAL/ DEFENDANTS' NOTICE OF REMOVAL OF CIVIL ACTION (FEDERAL QUESTION JURISDICTION, 28 U.S.C. § 1331)**

☒ by placing the ☐ original ☒ a true copy thereof enclosed in a sealed envelope addressed

☐ a. **ECF System** *(You must attach the "Notice of Electronic Filing", or list all persons and addresses and attach additional paper if necessary)*

☒ b. **BY U.S. MAIL OVERNIGHT.** I deposited such envelope in the mail at Las Vegas, Nevada. The envelope(s) were mailed with postage thereon fully prepaid. I am readily familiar with SEMENZA KIRCHER RICKARD'S practice of collection and processing correspondence for mailing. Under that practice, documents are deposited with the U.S. Postal Service on the same day which is stated in the proof of service, with postage fully prepaid at Las Vegas, Nevada in the ordinary course of business. I am aware that on motion of party served, service is presumed invalid if the postal cancellation date or postage meter date is more than one day after the date stated in this proof of service.

Mark R. Thierman, Esq.
Joshua D. Buck, Esq.
Leah L. Jones, Esq.
THIERMAN BUCK, LLP
7287 Lakeside Drive
Reno, Nevada 89511

*Attorneys for Plaintiff*

☐ c. **BY PERSONAL SERVICE.**

☐ d. **BY DIRECT EMAIL.**

☐ e. **BY FACSIMILE TRANSMISSION.**

**I declare under penalty of perjury that the foregoing is true and correct.**

*/s/ Jennifer A. Bidwell*
An Employee of SEMENZA KIRCHER RICKARD

# EXHIBIT A

# EXHIBIT A

Skip to Main Content  Logout  My Account  Search Menu  New District Civil/Criminal Search  Refine Search  Back    Location : District Court Civil/Criminal   Help

# REGISTER OF ACTIONS
## CASE NO. A-16-746526-C

| | | | |
|---|---|---|---|
| Arthur Coyne, Plaintiff(s) vs. Station Casinos LLC, Defendant(s) | § §§§§§§ | Case Type: | **Other Civil Matters** |
| | | Date Filed: | **11/10/2016** |
| | | Location: | **Department 15** |
| | | Cross-Reference Case Number: | **A746526** |

### PARTY INFORMATION

| | | **Lead Attorneys** |
|---|---|---|
| **Defendant** | **Red Rock Resorts Inc** | |
| **Defendant** | **Station Casinos LLC** | |
| **Plaintiff** | **Coyne, Arthur F** | **Mark R. Thierman** |
| | | *Retained* |
| | | 775-284-1500(W) |

### EVENTS & ORDERS OF THE COURT

| | |
|---|---|
| | **OTHER EVENTS AND HEARINGS** |
| 11/10/2016 | **Complaint With Jury Demand** |
| | *Collective and Class Action Complaint* |
| 11/15/2016 | **Demand for Jury Trial** |
| | *Demand for Jury Trial* |
| 12/12/2016 | **Declaration** |
| | *Declaration of Service* |
| 12/12/2016 | **Declaration** |
| | *Declaration of Service* |

### FINANCIAL INFORMATION

| | | | |
|---|---|---|---|
| **Plaintiff** Coyne, Arthur F | | | |
| Total Financial Assessment | | | 270.00 |
| Total Payments and Credits | | | 270.00 |
| **Balance Due as of 12/19/2016** | | | **0.00** |
| 11/14/2016 | Transaction Assessment | | 270.00 |
| 11/14/2016 | Wiznet | Receipt # 2016-110754-CCCLK | Coyne, Arthur F | (270.00) |

A- 16- 746526- C

# DISTRICT COURT CIVIL COVER SHEET
## CLARK _____ County, Nevada

Case No. _____
*(Assigned by Clerk's Office)*

XV

---

## I. Party Information *(provide both home and mailing addresses if different)*

| Plaintiff(s) (name/address/phone): | Defendant(s) (name/address/phone): |
|---|---|
| ARTHUR F. COYNE, on behalf of himself | STATION CASINOS, LLC |
| and all others similarly situated | RED ROCK RESORTS, INC. |
| | and DOES 1 through 50, inclusive |

| Attorney (name/address/phone): | Attorney (name/address/phone): |
|---|---|
| Mark R. Thierman, #8285, Joshua D. Buck, #12187, | |
| Leah L. Jones, #13161, Thierman Buck, LLP | |
| 7287 Lakeside Dr., Reno, NV 89511 | |
| 775-284-1500; 775-703-5027 (fax) | |

---

## II. Nature of Controversy *(please select the one most applicable filing type below)*

**Civil Case Filing Types**

| Real Property | Torts | |
|---|---|---|
| **Landlord/Tenant** | **Negligence** | **Other Torts** |
| ☐ Unlawful Detainer | ☐ Auto | ☐ Product Liability |
| ☐ Other Landlord/Tenant | ☐ Premises Liability | ☐ Intentional Misconduct |
| **Title to Property** | ☐ Other Negligence | ☐ Employment Tort |
| ☐ Judicial Foreclosure | **Malpractice** | ☐ Insurance Tort |
| ☐ Other Title to Property | ☐ Medical/Dental | ☐ Other Tort |
| **Other Real Property** | ☐ Legal | |
| ☐ Condemnation/Eminent Domain | ☐ Accounting | |
| ☐ Other Real Property | ☐ Other Malpractice | |

| Probate | Construction Defect & Contract | Judicial Review/Appeal |
|---|---|---|
| **Probate** *(select case type and estate value)* | **Construction Defect** | **Judicial Review** |
| ☐ Summary Administration | ☐ Chapter 40 | ☐ Foreclosure Mediation Case |
| ☐ General Administration | ☐ Other Construction Defect | ☐ Petition to Seal Records |
| ☐ Special Administration | **Contract Case** | ☐ Mental Competency |
| ☐ Set Aside | ☐ Uniform Commercial Code | **Nevada State Agency Appeal** |
| ☐ Trust/Conservatorship | ☐ Building and Construction | ☐ Department of Motor Vehicle |
| ☐ Other Probate | ☐ Insurance Carrier | ☐ Worker's Compensation |
| **Estate Value** | ☐ Commercial Instrument | ☐ Other Nevada State Agency |
| ☐ Over $200,000 | ☐ Collection of Accounts | **Appeal Other** |
| ☐ Between $100,000 and $200,000 | ☐ Employment Contract | ☐ Appeal from Lower Court |
| ☐ Under $100,000 or Unknown | ☐ Other Contract | ☐ Other Judicial Review/Appeal |
| ☐ Under $2,500 | | |

| Civil Writ | Other Civil Filing |
|---|---|
| **Civil Writ** | **Other Civil Filing** |
| ☐ Writ of Habeas Corpus    ☐ Writ of Prohibition | ☐ Compromise of Minor's Claim |
| ☐ Writ of Mandamus    ☐ Other Civil Writ | ☐ Foreign Judgment |
| ☐ Writ of Quo Warrant | ☑ Other Civil Matters |

*Business Court filings should be filed using the Business Court civil coversheet.*

---

**November 10, 2016**

Date

/s/Mark R. Thierman

Signature of initiating party or representative

*See other side for family-related case filings.*

Electronically Filed
11/10/2016 02:41:42 PM

**CLERK OF THE COURT**

1  COMJD
   Mark R. Thierman, Nev. Bar No. 8285
2  mark@thiermanbuck.com
   Joshua D. Buck, Nev. Bar No. 12187
3  josh@thiermanbuck.com
   Leah L. Jones, Nev. Bar No. 13161
4  leah@thiermanbuck.com
5  THIERMAN BUCK LLP
   7287 Lakeside Drive
6  Reno, Nevada 89511
   Tel. (775) 284-1500
7  Fax. (775) 703-5027

8
9  Christian Gabroy, Nev. Bar No. 8805
   GABROY LAW OFFICES
10 christian@gabroy.com
   170 S. Green Valley Pkwy
11 Henderson, NV 89012
   Tel. (702) 259-7777
12 Fax. (702) 259-7704

13 Charles A. Jones, Nev. Bar No. 6698
   caj@joneslawfirm.com
14 JONES LAW FIRM
   9585 Prototype Court, Suite B
15 Reno, NV 89521
   Tel. (775) 853-6440
16 Fax. (775) 853-6445

17
18 *Attorneys for Plaintiff*

19                     **DISTRICT COURT**
                    **CLARK COUNTY, NEVADA**
20

21 ARTHUR F. COYNE., on behalf of himself     Case No.:  A- 1 6 - 7 4 6 5 2 6 - C
   and all others similarly situated,
22                                             Dept. No.: XV
              Plaintiff,
23                                             **COLLECTIVE AND CLASS ACTION**
                                               **COMPLAINT**
24            vs.
                                               **(EXEMPT FROM ARBITRATION**
25 STATION CASINOS LLC, a Nevada              **PURSUANT TO NAR 5)**
   Limited Liability Company, RED ROCK
26 RESORTS, INC., a Delaware corporation,     1)  Failure to Pay Wages for All Hours
   and DOES 1 through 50, inclusive,              Worked in Violation of 29 U.S.C. § 201,
27                                                 et. seq;
              Defendants.
28                                             2)  Failure to Pay Overtime in Violation of
                                                   29 U.S.C. § 207;

Sidebar (left margin):
**THIERMAN BUCK LLP**
7287 Lakeside Drive
Reno, NV 89511
(775) 284-1500 Fax (775) 703-5027
Email info@thiermanbuck.com www.thiermanbuck.com

- 1 -
COLLECTIVE AND CLASS ACTION COMPLAINT

THIERMAN BUCK LLP
7287 Lakeside Drive
Reno, NV 89511
(775) 284-1500 Fax (775) 703-5027
Email info@thiermanbuck.com www.thiermanbuck.com

3)  Failure to Pay Minimum Wages in Violation of the Nevada Constitution

4)  Failure to Compensate for All Hours Worked in Violation of NRS 608.140 and 608.016;

5)  Failure to Pay Overtime in Violation of NRS 608.140 and 608.018;

6)  Failure to Timely Pay All Wages Due and Owing in Violation of NRS 608.140 and 608.020-050; and

7)  Breach of Contract.

**JURY TRIAL DEMANDED**

COMES NOW Plaintiff ARTHUR F. COYNE., on behalf of himself and all others similarly situated and alleges the following:

All allegations in the Complaint are based upon information and belief except for those allegations that pertain to the Plaintiff named herein and his counsel. Each allegation in the Complaint either has evidentiary support or is likely to have evidentiary support after a reasonable opportunity for further investigation and discovery.

## JURISDICTION AND VENUE

1.      This Court has original jurisdiction over the state law claims alleged herein because the amount in controversy exceeds $10,000 and because Plaintiff has a private right of action for minimum wages for all hours worked pursuant to Section 16 of Article 15 of the Nevada State Constitution. Article 15, Section 16(B) of the Constitution of the State of Nevada states in relevant part: "An employee claiming violation of this section may bring an action against his or her employer in the courts of this State to enforce the provisions of this section and shall be entitled to all remedies available under the law or in equity appropriate to remedy any violation of this section, including but not limited to back pay, damages, reinstatement or injunctive relief. An employee who prevails in any action to enforce this section shall be awarded his or her reasonable attorney's fees and costs."

2.      In addition, this court has jurisdiction over the Nevada statutory claims alleged herein because the parties seeking to recover unpaid wages have a private right of action

- 2 -
COLLECTIVE AND CLASS ACTION COMPLAINT

THIERMAN BUCK LLP
7287 Lakeside Drive
Reno, NV 89511
(775) 284-1500 Fax (775) 703-5027
Email info@thiermanbuck.com www.thiermanbuck.com

pursuant to the Nevada Constitution, Nevada Revised Statute ("NRS") sections 608.050 and 608.140, among others. *Baldonado v. Wynn Las Vegas, LLC*, 124 Nev. 951 (Nev. 2008); *Lucatelli v. Texas de Brazil (Las Vegas) Corp.*, 2012 U.S. Dist. LEXIS 66765, *7 (D. Nev. May 11, 2012) (recognizing that the Nevada Supreme Court stated "it is 'illogical' that a plaintiff who can privately enforce a claim for attorneys' fees under NRS § 608.140 cannot privately enforce the underlying claim the fees arose from") (citing *Csomos v. Venetian Casino Resort, LLC*, No. 55203, 2011 Nev. Unpub. LEXIS 1629, 2011 WL 4378744, at *2 (Nev. Sept. 19, 2011)); accord, *Busk v. Integrity Staffing Solutions, Inc.*, 2013 U.S. App. LEXIS 7397 (9th Cir. Nev. Apr. 12, 2013)("Nevada Revised Statute § 608.140 does provide a private right of action to recoup unpaid wages.") cert. granted 2014 WL 801096 (Mar. 3, 2014), rev'd on other grounds, No. 13-433, 2014 WL 6885951 (U.S. Dec. 9, 2014); *Evans v. Wal-Mart Stores, Inc.*, No. 14-16566, 2016 WL 4269904 (9th Cir. August 15, 2016) (Terminated employees have a private right of action for statutorily mandated overtime premium pay both as wages and as compensation under NRS 608.040 and 608.050); *see also Doolittle v. Eight Judicial Dist. Court*, 54 Nev. 319, 15 P.2d 684; 1932 Nev. LEXIS 34 (1932) (recognizing that former employees have a private cause of action to sue their employer (as well as third party property owners where the work was performed) for wages and waiting penalties under NRS 608.040 and NRS 608.050).

3.      This Court also has jurisdiction over the federal claims alleged herein pursuant to Fair Labor Standards Act ("FLSA"), because 29 U.S.C. § 216(b) states (emphasis supplied): "An action to recover the liability prescribed in either of the preceding sentences may be maintained against any employer (including a public agency) in any Federal ***or State court of competent jurisdiction*** by any one or more employees for and in behalf of himself or themselves and others employees similarly situated."

4.      Plaintiff sent the requisite NRS 608.140 demand to Defendants via registered mail dated October 14, 2016. Defendants responded to Plaintiffs' demand on November 1, 2016 denying Plaintiff's claims, asserting that Plaintiff's Complaint has no factual basis. Plaintiff's counsel further investigated the claims of Plaintiff, and secured a declaration from Plaintiff

Arthur F. Coyne setting forth the factual basis of those claims. *See* Declaration of Arthur F. Coyne, hereinafter "Coyne Dec." attached as Exhibit A.   The contents of Exhibit A are incorporated by reference as if fully set forth herein.

5.      Venue is proper in this Court because one or more of the Defendants named herein maintains a principal place of business or otherwise is found in the judicial district and many of the acts complained of herein occurred in Clark County, Nevada.

<u>**PARTIES**</u>

6.      Plaintiff ARTHUR F. COYNE., (hereinafter "Plaintiff" or "COYNE") is a natural person who was a resident of the State of Nevada at all relevant times herein and was employed by Defendant as a non-exempt hourly employee from on or about April 3, 2006 to on or about June 25, 2015.

7.      Defendant STATION CASINOS, LLC., (hereinafter "Defendant" or "Station") is a Nevada limited liability company with its principal place of business at 11011 West Charleston Boulevard, Las Vegas, Nevada. This Defendant is an employer engaged in commerce under the provisions of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et. seq.* and is an employer under NRS 608.011.

8.      Defendant Red Rock Resorts, Inc., (Hereinafter "Defendant" or "Red Rock") is a Delaware Corporation with its principal place of business located in Las Vegas, Nevada. This Defendant is an employer engaged in commerce under the provisions of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et. seq.* and is an employer under NRS 608.011.

9.      The identity of DOES 1-50 is unknown at the time and the Complaint will be amended at such time when the identities are known to Plaintiff. Plaintiff is informed and believes that each Defendants sued herein as DOE is responsible in some manner for the acts, omissions, or representations alleged herein and any reference to "Defendant," "Defendants," or "Station" herein shall mean "Defendants and each of them."

<u>**FACTUAL ALLEGATIONS**</u>

10.     Station is a gaming, development and management company that owns and operates nine major hotel/casino properties and ten smaller casino properties in the Las Vegas

THIERMAN BUCK LLP
7287 Lakeside Drive
Reno, NV 89511
(775) 284-1500 Fax (775) 703-5027
Email info@thiermanbuck.com www.thiermanbuck.com

THIERMAN BUCK LLP
7287 Lakeside Drive
Reno, NV 89511
(775) 284-1500 Fax (775) 703-5027
Email info@thiermanbuck.com www.thiermanbuck.com

regional market.  The hotel/casino properties which are owned and operated by Stations include the following: Red Rock Casino, Resort & Spa; Green Valley Ranch Resort, Spa & Casino; Palace Station; Sunset Station; Boulder Station; Santa Fe Station; Texas Station; Fiesta Rancho; Fiesta Henderson; Barley's Casino & Brewing; The Greens Gaming & Dining; Wildfire Boulder; Wildfire Rancho; Wildfire Casino & Lanes; Wildfire Sunset; Wildfire Anthem; Wildfire Valley View; Wildfire Lake Mead; and Wild Wild West.  Plaintiff was formerly employed by Defendants as a table games dealer at one of their Las Vegas casino locations.

11.     Red Rock was formed as a Delaware corporation in September 2015 to manage and own an indirect equity interest in Station Casinos LLC.  Presently, Red Rock holds 100% of the voting interest in Station.  Red Rock also controls and operates all of the business and affairs of Station.  At all times relevant herein, Red Rock has acted directly and indirectly in the interest of Defendant Station in relation to Plaintiff and all others similarly situated and qualifies as a joint employer with Defendant Station and is therefore subject to individual liability under §203(d) of the Fair Labor Standards Act and 29 C.F.R. §791.2.  Red Rock has exercised significant control over the nature and structure of the employment relationship for Plaintiff and all others similarly situated and has also exercised significant economic control over Station and the relationship of Plaintiff and all other similarly situated with Station.  Further, Red Rock has approved and ratified all the illegal acts alleged herein.

12.     At all times relevant herein, Defendants have employed a number of hourly paid employees at each of their casino/hotel properties, including Plaintiff and all others similarly situated.

13.     At all times relevant herein, Defendants have engaged in an illegal, willful and malicious policy and practice of failing to compensate their hourly employees, including Plaintiff and all others similarly situated, working for Defendants at their casino/hotels located in the State of Nevada for all hours worked.  This policy and practice was effectuated by requiring employees to attend a mandatory pre-shift meeting off the clock and without compensation.

14.     At the time of his separation of employment from Defendants, Plaintiff was making $7.65 per hour. *See* Coyne Dec. at ¶ 7. Plaintiff was scheduled for, eight hour shifts, five days per week, and regularly worked, at least a 40-hour workweek. *Id.* at ¶ 9.

15.     Defendants required all employees who worked as dealers to attend a pre-shift meeting without compensation. *Id.* at ¶¶ 11- 14. These pre-shift meetings are one of the ways that Station communicates to its employees as stated in the Station Employee Handbook attached to this Complaint as Exhibit B, hereinafter "Handbook" at p. 5, "Pre-shift Meetings (Huddles)."  The pre-shift meetings were held in order to have employees check in with the shift manager and/or supervisor, who would instruct employees on job duties, special events in the area, and at all Station Casino properties, occupancy, and other job related information. Pre-shift meetings could take 10 minutes or more and were held off the clock, i.e., before employees logged in for work using Defendants' automated time keeping system. *See* Coyne Dec. at ¶ 11.  Despite the fact that Plaintiff and all others similarly situated were performing compensable work during this period, they were not paid for said work by Defendants.

16.     Plaintiff and all others similarly situated were routinely denied approximately 10 minutes of uncompensated time at least three shifts per week and as many as four shifts per week. *Id.* Since Plaintiff and all others similarly situated were routinely scheduled for, and indeed worked, at least 40 hours per workweek, the amount of time that was rounded off their work time was to be paid at the overtime rate of pay of 1.5 times his regular hourly rate. Plaintiff and all others similarly situated were thus deprived of thirty (30) to forty (40) minutes of uncompensated time per workweek that he worked.

17.     At all times relevant herein, Defendants have maintained a strict attendance policy applicable to Plaintiff and all other similarly situated hourly employees employed by Defendants.  Pursuant to Defendants' attendance policy, Plaintiff and all others similarly situated were required to be present at their respective work station(s) and "ready to work" by their scheduled shift start time.  Otherwise, Plaintiff and all others similarly situated were deemed to be tardy and in violation of Defendants' strict attendance policy.  Violations of Defendants' attendance policy, i.e., being tardy, could result in Plaintiff and all others similarly

THIERMAN BUCK LLP
7287 Lakeside Drive
Reno, NV 89511
(775) 284-1500 Fax (775) 703-5027
Email info@thiermanbuck.com www.thiermanbuck.com

situated being verbally counseled, written up, and ultimately terminated. *See* Coyne Dec. at ¶¶ 14-15.

18.     At all times relevant herein, Defendants had an agreement with Plaintiff and all others similarly situated to pay an agreed upon hourly wage rate for all hours they worked for Defendants. Indeed, Defendants offered to pay Plaintiff and others similarly situated a specific rate of pay in exchange for their promise to perform work for Defendants.

19.     The parties' employment agreement necessarily incorporated all applicable provisions of both state and federal law, including the labor laws of the State of Nevada.

20.     Terms of Plaintiff's employment contained in Defendants' Handbook given to Plaintiff and all others similarly situated specifically contains at page 10 of Exhibit B the following:

A.     **Employment Status** - All Team Members who are designated as non-exempt are entitled to be paid at least the minimum wage per hour and premium for overtime.

B.     **Overtime Pay Procedures** – To meet business schedules and needs, it may be necessary to require Team Members to work overtime. All overtime work must be approved by your Supervisor in advance. Any Team Member who works unauthorized overtime will be properly compensated for this time but may be subject to coaching or progressive discipline for failing to comply with this policy. All overtime is paid consistently with legal requirements.

C.     **Team Member Work Hours/Work Schedules** – The Company relies on its Team Members to be present and prompt when reporting for work. … It is essential that you adhere to the posted schedule and report to your workstation at your scheduled time. … Changes to a team Member's schedule can only be made with Management approval.

D.     **Recording Work Hours** – The Company's policy requires that all Team Members designated as non-exempt accurately record their hours worked each day and inform Management of any difficulties or problems in doing so. All

THIERMAN BUCK LLP
7287 Lakeside Drive
Reno, NV 89511
(775) 284-1500 Fax (775) 703-5027
Email info@thiermanbuck.com www.thiermanbuck.com

THIERMAN BUCK LLP
7287 Lakeside Drive
Reno, NV 89511
(775) 284-1500 Fax (775) 703-5027
Email info@thiermanbuck.com www.thiermanbuck.com

non-exempt Team Members are responsible for clocking in at the commencement of work and clocking out at the conclusion of work. Additionally, non-exempt Team Members are expected to record any meal breaks. Timekeeping procedures will be explained to new Team Members prior to beginning his or her first shift.…

The Company prohibits all non-exempt Team Members from performing any work without recording their time for payroll purposes (i.e., "working off the clock.") Team Members will not be directed to work off the clock.

21.     At all times relevant herein, Defendants have been aware that their policy and practice of failing to fully compensate Plaintiffs and all others similarly situated for all hours worked was illegal. Further, Defendants' practice as set forth herein are anti-competitive in that these illegal practices make one of Defendants' largest cost items, labor, lower than as compared to other casino owners/operators who comply with the labor laws.

## COLLECTIVE AND CLASS ACTION ALLEGATIONS

22.     Plaintiff realleges and incorporates by reference all the paragraphs above in the Complaint as though fully set forth herein.

23.     Plaintiff brings the action on behalf of himself and all other similarly situated hourly paid employees employed by Defendants in Nevada as both a collective action under the FLSA and a true class action under Nevada law.

24.     The **FLSA CLASS** consists of all hourly paid dealers employed by Defendants, in the United States within three years immediately preceding the filing of this action until the date of judgement after trial.

25.     With regard to the conditional certification mechanism under the FLSA, Plaintiff is similarly situated to those that he seeks to represent for the following reasons, among others:

A.     Plaintiff seeks preliminary and final certification and requests an order from this court that notice of this action be sent to all prospective FLSA CLASS Members so that they may become party plaintiffs in this litigation pursuant to 29 U.S.C. §216(b) if they so desire.

B.     Defendant employed Plaintiff as a dealer who did not receive compensated for attending mandatory pre-shift meetings.

C.     Plaintiff's situation is similar to those he seeks to represent because Defendant failed to pay Plaintiff and all other FLSA CLASS Members for the time spent attending mandatory pre-shift meetings.

D.     Upon information and belief, Defendant employs, and has employed, in excess of 300 FLSA CLASS Members within the applicable statute of limitations.

E.     Plaintiff has signed a Consent to Join form, which is attached to the Complaint as Exhibit C.

26.     The **NEVADA CLASS** consists of all hourly paid employees employed by Defendant, in the State of Nevada within six years immediately preceding the filing of this action until the date of judgement after trial. The NEVADA CLASS is further divided into the following sub-class:

A.     **WAGES DUE AND OWING SUB-CLASS**: All members of the NEVADA CLASS who are former employees.

27.     Rule 23 treatment is appropriate for the Nevada Class and each subclass specified herein for the following reasons:

A.     The NEVADA CLASS and each SUB-CLASS is Sufficiently Numerous. Upon information and belief, Defendant employs, and has employed, in excess of 300 NEVADA CLASS Members and at least several hundred within each sub-class within the applicable statute of limitations. Because Defendant is legally obligated to keep accurate payroll records, Plaintiff alleges that Defendant's records will establish the identity and ascertainably of members of the NEVADA Class and each SUB-CLASS as well as their numerosity.

B.     Plaintiff's Claims are Typical to Those of Fellow Class and Sub-Class Members. Each NEVADA CLASS and each Sub-Class Member is and was subject to the same practices, plans, and/or policies as Plaintiff, as follows: (1)

THIERMAN BUCK LLP
7287 Lakeside Drive
Reno, NV 89511
(775) 284-1500 Fax (775) 703-5027
Email info@thiermanbuck.com www.thiermanbuck.com

- 9 -
COLLECTIVE AND CLASS ACTION COMPLAINT

THIERMAN BUCK LLP
7287 Lakeside Drive
Reno, NV 89511
(775) 284-1500 Fax (775) 703-5027
Email info@thiermanbuck.com www.thiermanbuck.com

Defendant failed to pay new hire employees the Nevada Constitutional minimum wage because of a company-wide policy to pay all new hires less than $8.25 an hour and a company-wide policy of not offering medical insurance to employees until after 90 days of continuous employment; (2) Defendant required Plaintiff and all NEVADA CLASS Members to engage in pre-shift activities without compensation because of a companywide policy of requiring, suffering or permitting employees to perform work off the clock;  and (3) as a result of working employees off the clock,  Defendant failed to pay Plaintiff and WAGES DUE AND OWING SUB-CLASS Members all wages due and owing at the time of their termination or separation from employment.

C.   **Common Questions of Law and Fact Exist.** Common questions of law and fact exist and predominate as to Plaintiff and the Nevada class, including all sub-classes, including, without limitation the following: (1) Whether Plaintiff and NEVADA Class Members must be compensated for the mandatory pre-shift meeting; and (2) Whether Defendant delayed final payment to Plaintiffs and WAGES DUE AND OWING SUB-CLASS Members in violation of NRS 608.020-050.

D.   **Plaintiff Is an Adequate Representative of the Class and each SUB-CLASS.** Plaintiff will fairly and adequately represent the interests of the NEVADA CLASS and each SUB-CLASS because Plaintiff is a member of the class and each SUB-CLASS, he has issues of law and fact in common with all members of the class and each SUB-CLASS, and he does not have any interests antagonistic to the members of the class or any SUB-CLASS.  Plaintiff and counsel are aware of their fiduciary responsibilities to Members of the class and each SUB-CLASS and are determined to discharge those duties diligently and vigorously by seeking the maximum possible recovery for the class and sub-class as a group.

THIERMAN BUCK LLP
7287 Lakeside Drive
Reno, NV 89511
(775) 284-1500 Fax (775) 703-5027
Email info@thiermanbuck.com www.thiermanbuck.com

E.    Superiority/Predominance. A class action is superior to other available means for the fair and efficient adjudication of their controversy and common questions predominate over individualized issues. Each Member of the class and each SUB-CLASS has been damaged and is entitled to recovery by reason of Defendant's illegal policy and/or practice of failing to compensate its employees in accordance with federal and Nevada wage and hour law. The prosecution of individual remedies by each member of the class and each SUB-CLASS will be cost prohibitive and may lead to inconsistent standards of conduct for Defendant and result in the impairment of the rights and the disposition of their interest through actions to which they were not parties.

## FIRST CAUSE OF ACTION

### Failure to Pay Wages in Violation of the FLSA, 29 U.S.C. § 201, et seq.

(On Behalf of Plaintiff and all members of the FLSA CLASS)

28.    Plaintiff realleges and incorporates by reference all the paragraphs above in the Complaint as though fully set forth herein.

29.    Pursuant to the FLSA, 29 U.S.C. § 201, et seq., Plaintiff and all FLSA CLASS Members are entitled to compensation at their regular rate of pay or minimum wage rate, whichever is higher, for all hours actually worked.

30.    29 U.S.C. § 206(a)(l) states that "Every employer shall pay to each of his employees who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce, wages at the following rates: (1) except as otherwise provided in this section, not less than (A) $5.85 an hour beginning on the 60th day after the enactment of the Fair Minimum Wage Act of 2007; (B) $6.55 an hour, beginning 12 months after that 60th day; and C) $7.25 an hour, beginning 24 months after that 60th day."

31.    By failing to compensate Plaintiff and FLSA CLASS Members for the time spent attending the mandatory pre-shift meetings identified above, Defendant failed to pay Plaintiff and the FLSA CLASS Members for all hours worked.

32.     Defendant's unlawful conduct has been widespread, repeated, and willful. Defendant knew or should have known that its policies and practices have been unlawful and unfair.

33.     Wherefore, Plaintiff demands for himself and for all others similarly situated, that Defendant pay Plaintiff and all other members of the FLSA CLASS the minimum hourly wage rate or their regular rate of pay, whichever is greater, for all hours worked during the relevant time period together with liquidated damages, attorneys' fees, costs, and interest as provided by law

## SECOND CAUSE OF ACTION

### Failure to Pay Overtime Wages in Violation of the FLSA, 29 U.S.C. § 207

(On Behalf of Plaintiff and all members of the FLSA CLASS)

34.     Plaintiff realleges and incorporates by reference all the paragraphs above in the Complaint as though fully set forth herein.

35.     29 U.S.C. Section 207(a)(1) provides as follows:  "Except as otherwise provided in the section, no employer shall employ any of his employees who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce, for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed."

36.     By failing to compensate Plaintiff and FLSA CLASS Members for the time spent attending the mandatory pre-shift meetings identified above, Defendant failed to pay Plaintiff and the FLSA CLASS Members for all hours worked.

37.     Wherefore, Plaintiff demands for himself and for all others similarly situated, that Defendant pay Plaintiff and FLSA CLASS Members one and one half times their regular hourly rate of pay for all hours worked in excess of forty (40) hours a week during the relevant time period together with liquidated damages, attorneys' fees, costs, and interest as provided by law.

THIERMAN BUCK LLP
7287 Lakeside Drive
Reno, NV 89511
(775) 284-1500 Fax (775) 703-5027
Email info@thiermanbuck.com www.thiermanbuck.com

THIERMAN BUCK LLP
7287 Lakeside Drive
Reno, NV 89511
(775) 284-1500 Fax (775) 703-5027
Email info@thiermanbuck.com www.thiermanbuck.com

**THIRD CAUSE OF ACTION**

**Failure to Pay Minimum Wages in Violation of the Nevada Constitution**

(On Behalf of Plaintiff and all members of the NEVADA CLASS)

38.    Plaintiff realleges and incorporates by reference all the paragraphs above in the Complaint as though fully set forth herein.

39.    Article 15, Section 16(A) of the Constitution of the State of Nevada sets forth the minimum wage requirements in the State of Nevada and further provides that "[t]he provisions of this section may not be waived y agreement between an individual employee and an employer. ... An employee claiming violation of this section may bring an action against his or her employer in the courts of this State to enforce the provisions of this section and shall be entitled to all remedies available under the law or in equity appropriate to remedy any violation of this section, including but not limited to back pay, damages, reinstatement or injunctive relief. An employee who prevails in any action to enforce this section shall be awarded his or her reasonable attorney's fees and costs."

40.    By failing to compensate Plaintiff and NEVADA CLASS Members any sort of compensation (zero dollars) for the time spent engaging in pre-shift meeting identified above, Defendants failed to pay Plaintiff and NEVADA CLASS Members for all hours worked in violation of the Nevada Constitution.

41.    There is a two-year statute of limitations for Nev. Const. art. 15 § 16.

42.    Wherefore, Plaintiff demands for himself and for NEVADA CLASS Members payment by Defendant at their regular hourly rate of pay or the minimum wage rate, whichever is higher, for all hours worked for the two years immediately preceding the filing of this complaint until the date of judgement after trial, together with attorneys' fees, costs, and interest as provided by law.

**FOURTH CAUSE OF ACTION**

**Failure to Pay Wages for All Hours Worked in Violation of NRS 608.140 and 608.016**

(On Behalf of Plaintiff and all members of the NEVADA CLASS)

COLLECTIVE AND CLASS ACTION COMPLAINT

THIERMAN BUCK LLP
7287 Lakeside Drive
Reno, NV 89511
(775) 284-1500 Fax (775) 703-5027
Email info@thiermanbuck.com www.thiermanbuck.com

43.     Plaintiff realleges and incorporates by the reference all the paragraphs above in the Complaint as though fully set forth herein.

44.     NRS 608.140 provides that an "employee" shall have the right to bring suit for unpaid wages.  An "employee" in Nevada is any person "in the service of an employer under any appointment or contract of hire or apprenticeship, express or implied, oral or written, whether lawfully or unlawfully employed."

45.     Nevada Revised Statutes ("NRS") 608.016 entitled, "Payment for each hour of work; trial or break-in period not excepted" states that: "An employer shall pay to the employee wages for each hour the employee works. An employer shall not require an employee to work without wages during a trial or break-in period."

46.     Nevada Administrative Code ("NAC") 608.115(1), entitled "Payment for time worked. (NRS 607.160, 608.016, 608.250)" states: "An employer shall pay an employee for all time worked by the employee at the direction of the employer, including time worked by the employee that is outside the scheduled hours of work of the employee."

47.     By failing to compensate Plaintiff and NEVADA CLASS Members for the time spent attending the mandatory pre-shift meetings identified above, Defendant failed to pay Plaintiff and NEVADA CLASS Members for all hours worked in violation of NRS 608.140 and 608.016.

48.     Wherefore, Plaintiff demands for himself and for all NEVADA CLASS Members payment by Defendant, payment at the Nevada Constitutional minimum wage, or their regular rate of pay, or any applicable overtime premium rate, whichever is higher, all wages due for the times worked each shift but not paid, for three years immediately preceding the filing of this complaint until the date of judgement after trial, together with attorneys' fees, costs, and interest as provided by law.

## FIFTH CAUSE OF ACTION

### Failure to Pay Overtime Wages in Violation of NRS 608.140 and 608.018

(On Behalf of Plaintiff and all members of the NEVADA CLASS)

49.     Plaintiff realleges and incorporates by this reference all the paragraphs above in this Complaint as though fully set forth herein.

50.     NRS 608.140 provides that an employee has a private right of action for unpaid wages.

51.     NRS 608.018(1) provides as follows:

> An employer shall pay 1 1/2 times an employee's regular wage rate whenever an employee who receives compensation for employment at a rate less than 1 1/2 times the minimum rate prescribed pursuant to NRS 608.250 works: (a) More than 40 hours in any scheduled week of work; or (b) More than 8 hours in any workday unless by mutual agreement the employee works a scheduled 10 hours per day for 4 calendar days within any scheduled week of work.

52.     NRS 608.018(2) provides as follows:

> An employer shall pay 1 1/2 times an employee's regular wage rate whenever an employee who receives compensation for employment at a rate not less than 1 1/2 times the minimum rate prescribed pursuant to NRS 608.250 works more than 40 hours in any scheduled week of work

53.     By failing to compensate Plaintiff and NEVADA CLASS Members for the time spent attending the mandatory pre-shift meetings identified above, Defendant failed to pay Plaintiff and NEVADA CLASS Members daily overtime premium pay for all hours worked over eight (8) hours in a workday to those NEVADA CLASS Members who were paid a regular rate of less than one and one half times the minimum wage premium pay and, failed to pay a weekly premium overtime rate of pay of time and one half their regular rate for all members of the NEVADA Class who worked in excess of forty (40) hours in a week in violation of NRS 608.140 and 608.018.

54.     Wherefore, Plaintiff demands for herself and for the NEVADA CLASS Members payment by Defendant at one and one half times their "regular rate" of pay for all hours worked in excess of eight (8) hours in a workday for those class members whose regular rate of pay did not exceed the one and one half the minimum wage set by law, and premium

THIERMAN BUCK LLP
7287 Lakeside Drive
Reno, NV 89511
(775) 284-1500 Fax (775) 703-5027
Email info@thiermanbuck.com www.thiermanbuck.com

overtime rate of one and one half their regular rate for all class members who worked in excess of forty (40) hours a workweek during the Class Period together with attorneys' fees, costs, and interest as provided by law.

## SIXTH CAUSE OF ACTION

**Failure to Timely Pay All Wages Due and Owing Upon Termination Pursuant to NRS 608.140 and 608.020-.050**

(On Behalf of Plaintiff and the WAGES DUE AND OWING SUB-CLASS)

55.     Plaintiff realleges and incorporates by reference all the paragraphs above in the Complaint as though fully set forth herein.

56.     NRS 608.140 provides that an employee has a private right of action for unpaid wages.

57.     NRS 608.020 provides that "[w]henever an employer discharges an employee, the wages and compensation earned and unpaid at the time of such discharge shall become due and payable immediately."

58.     NRS 608.040(1)(a-b), in relevant part, imposes a penalty on an employer who fails to pay a discharged or quitting employee: "Within 3 days after the wages or compensation of a discharged employee becomes due; or on the day the wages or compensation is due to an employee who resigns or quits, the wages or compensation of the employee continues at the same rate from the day the employee resigned, quit, or was discharged until paid for 30-days, whichever is less."

59.     NRS 608.050 grants an "employee lien" to each discharged or laid-off employee for the purpose of collecting the wages or compensation owed to them "in the sum agreed upon in the contract of employment for each day the employer is in default, until the employee is paid in full, without rendering any service therefor; but the employee shall cease to draw such wages or salary 30 days after such default."

60.     By failing to pay Plaintiff and all members of the WAGES DUE AND OWING SUB-CLASS for all hours worked in violation of state and federal law, at the correct legal rate,

THIERMAN BUCK LLP
7287 Lakeside Drive
Reno, NV 89511
(775) 284-1500 Fax (775) 703-5027
Email info@thiermanbuck.com www.thiermanbuck.com

Defendant has failed to timely remit all wages due and owing to Plaintiff and all members of the WAGES DUE AND OWING SUB-CLASS.

61.    Despite demand, Defendant willfully refuses and continues to refuse to pay Plaintiff and all WAGES DUE AND OWING SUB-CLASS Members.

62.    Wherefore, Plaintiff demands thirty (30) days wages under NRS 608.140 and 608.040, and an additional thirty (30) days wages under NRS 608.140 and 608.050 for all members of the WAGES DUE AND OWING SUB-CLASS together with attorneys' fees, costs, and interest as provided by law.

## SEVENTH CAUSE OF ACTION

### Breach of Contract

(On Behalf of Plaintiff and the NEVADA CLASS)

63.    Plaintiff realleges and incorporates by reference all the paragraphs above in the Complaint as though fully set forth herein.

64.    At all times relevant herein, Defendant had an agreement with Plaintiff and with every NEVADA CLASS Member to pay an agreed upon hourly wage rate for all hours they worked for Defendant. Indeed, Defendant offered to pay Plaintiff and NEVADA CLASS Members a specific rate of pay in exchange for Plaintiff and Class Members' promise to perform work for Defendant. That agreement necessarily included the agreement to be paid in accordance with Nevada's wage and hour laws.

65.    Plaintiff and every NEVADA CLASS Member were not volunteers. Plaintiff and the Class complied with their obligation each and every day by showing up for work and performing labor for Defendant. Defendant failed in its obligation to pay Plaintiff and NEVADA CLASS Members overtime pay pursuant to Nevada law for all the hours that they worked for Defendant.

66.    Defendant breached its agreement with Plaintiff and NEVADA CLASS Members by failing to compensate them for the time spent attending mandatory pre-shift meetings.

THIERMAN BUCK LLP
7287 Lakeside Drive
Reno, NV 89511
(775) 284-1500 Fax (775) 703-5027
Email info@thiermanbuck.com www.thiermanbuck.com

67.     As a result of Defendants' breach, Plaintiff and NEVADA CLASS Members have suffered economic loss that includes lost wages and interest.

68.     The statute of limitations for breach of a written agreement is six years.

69.     Wherefore, Plaintiff demands for himself and for NEVADA CLASS Members that Defendant pay Plaintiff and NEVADA CLASS Members their agreed upon rate of pay for all hours worked off the clock during the relevant time period alleged herein together with attorney's fees, costs, and interest as provided by law.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a jury trial pursuant to Nevada Rule of Civil Procedure 38.

## PRAYER FOR RELIEF

Wherefore Plaintiff, individually and on behalf of all Members of the FLSA CLASS, the NEVADA CLASS and the SUB-CLASSES alleged herein, prays for relief as follows:

1.      For an order conditionally certifying the action under the FLSA and providing notice to all FLSA CLASS members so they may participate in the lawsuit;

2.      For an order certifying the action as a traditional class action under Nevada Rule of Civil Procedure Rule 23 on behalf of all members of the NEVADA CLASS and each proposed SUB-CLASS;

3.      For an order appointing Plaintiff as the Representative of the NEVADA CLASS and each SUB-CLASS and his counsel as Class Counsel for the NEVADA CLASS and each SUB-CLASS;

4.      For damages according to proof at the minimum wage rate, the regular rate or the overtime premium rate, if applicable, for payment under Article 15, Section 16 of the Constitution of the State of Nevada, NRS 608.140, NRS 608.016, and NRS 608.018 for all hours worked but not paid;

5.      For damages according to proof at the minimum wage rate, the regular rate or the overtime premium rate, if applicable, under federal laws for all hours worked but not paid;

6.      For liquidated damages pursuant to 29 U.S. C. § 216(b);

THIERMAN BUCK LLP
7287 Lakeside Drive
Reno, NV 89511
(775) 284-1500 Fax (775) 703-5027
Email info@thiermanbuck.com www.thiermanbuck.com

7.      For waiting time penalties pursuant to NRS 608.140 and 608.040-.050;

8.      For damages pursuant to Defendants' breach of contract;

9.      For interest as provided by law at the maximum legal rate;

10.     For reasonable attorneys' fees authorized by statute;

11.     For costs of suit incurred herein;

12.     For pre-judgment and post-judgment interest, as provided by law; and

13.     For such other and further relief as the Court may deem just and proper.


DATED: November 10, 2016            Respectfully Submitted,

                                    **THIERMAN BUCK LLP**


                                    /s/ *Mark R. Thierman*
                                    Mark R. Thierman
                                    Joshua D. Buck
                                    Leah L. Jones

                                    **Attorneys for Plaintiff**

THIERMAN BUCK LLP
7287 Lakeside Drive
Reno, NV 89511
(775) 284-1500 Fax (775) 703-5027
Email info@thiermanbuck.com www.thiermanbuck.com

1

## **Exhibit List**

2      A.  Declaration of Arthur Coyne

3      B.  Employee Handbook

4      C.  Consent to Join

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

THIERMAN BUCK LLP
7287 Lakeside Drive
Reno, NV 89511
(775) 284-1500 Fax (775) 703-5027
Email info@thiermanbuck.com www.thiermanbuck.com

COLLECTIVE AND CLASS ACTION COMPLAINT

# EXHIBIT A

## *Declaration of Arthur Coyne*

# EXHIBIT A

DECL
Mark R. Thierman, Nev. Bar No. 8285
mark@thiermanbuck.com
Joshua D. Buck, Nev. Bar No. 12187
josh@thiermanbuck.com
Leah L. Jones, Nev. Bar No. 13161
leah@thiermanbuck.com
THIERMAN BUCK LLP
7287 Lakeside Drive
Reno, Nevada 89511
Tel. (775) 284-1500
Fax. (775) 703-5027

Christian Gabroy, Nev. Bar No. 8805
GABROY LAW OFFICES
christian@gabroy.com
170 S. Green Valley Pkwy
Henderson, NV 89012
Tel. (702) 259-7777
Fax. (702) 259-7704

Charles A. Jones, Nev. Bar No. 6698
caj@joneslawfirm.com
JONES LAW FIRM
9585 Prototype Court, Suite B
Reno, NV 89521
Tel. (775) 853-6440
Fax. (775) 853-6445

*Attorneys for Plaintiff*

## DISTRICT COURT
## CLARK COUNTY, NEVADA

| | |
|---|---|
| ARTHUR F. COYNE., on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>STATION CASINOS LLC, a Nevada Limited Liability Company, RED ROCK RESORTS, INC., a Delaware corporation, and DOES 1 through 50, inclusive,<br><br>Defendant(s). | Case No.:<br><br>Dept. No.:<br><br>**DECLARATION OF ARTHUR F. COYNE** |

*Left margin (vertical text):*
THIERMAN BUCK LLP
7287 Lakeside Drive
Reno, NV 89511
(775) 284-1500 Fax (775) 703-5027
Email info@thiermanbuck.com www.thiermanbuck.com

- 1 -
DECLARATION OF ARTHUR F. COYNE

THIERMAN BUCK LLP
7287 Lakeside Drive
Reno, NV 89511
(775) 284-1500 Fax (775) 703-5027
Email info@thiermanbuck.com www.thiermanbuck.com

I, Arthur F. Coyne, hereby declare and state as follows:

1.      I am over the age of eighteen. I currently live in Elmhurst, Illinois.

2.      I lived in Las Vegas, Nevada from January 2006 until July 2015.

3.      I have personal knowledge of the facts and circumstances set forth in this declaration.  If I was called as a witness, I would and could competently testify to the matters set forth herein.

4.      From on or about April 3, 2006 to on or about June, 25, 2015 I was employed by Station Casinos, Red Rock Casino as a non-exempt hourly paid table games dealer.

5.      My starting wage rate was $5.15. I was offered insurance after 90 days. I opted in to the insurance program as soon as I was eligible.

6.      I believe my first wage rate increase was $5.30 around July 2006.  I believe my next increase was to $7.00 around April 2007.  I believe my next increase was to $7.10 around July 2007.  I believe the next increase was to $7.20 around July 2008. I believe the next increase was to $7.25 around August 2009. I believe my next increase was to $7.50 around August 2012.

7.      At the time I was terminated from Station Casino my wage rate was $7.65 and I was still receiving insurance through Station.

8.      My regular schedule varied but typically I was scheduled from 7:00 p.m. to 3:00 a.m. Friday through Tuesday.

9.      I was regularly scheduled for and worked eight hour shifts, five days per week, at least a 40-hour workweek.  As a dealer, we were scheduled to deal for one (1) hour then we got a twenty (20) minute break/meal period. We did not clock in and out for these breaks.

10.     I clocked in at a physical time clock in the hallway that lead up to the casino floor. Everyone had to line up there to clock in and out. The clocks in the hallway by the casino were the only clocks we were allowed to use. I was not able to review my time cards.

11.     Station required me to arrive 10 to 15 minutes prior to the beginning of my regularly scheduled shift in order attend a pre-shift meeting, which could take about 10 minutes prior to my actual scheduled shift start time.  We would do the pre-shift meeting in the hallway

**THIERMAN BUCK LLP**
7287 Lakeside Drive
Reno, NV 89511
(775) 284-1500 Fax (775) 703-5027
Email info@thiermanbuck.com www.thiermanbuck.com

or stairway and then everyone had to line up at the clock and wait for each other to clock in before we actually went to our games. If we happened to be clocked in a few minutes before our shift started, I believe this time was rounded to the top of the hour.

12.     Even though I clocked in and was attending the required pre-shift meeting ten minutes or more before my regularly scheduled shift I was never paid for the attending these mandatory pre-shift meetings.

13.     Pre-shift meetings were held prior to almost every shift, usually three to four times a week, and were conducted by the shift manager or the supervisor on duty.  In these meetings, the supervisor would go over job duties, procedural talks, and other job-related information, special events in the area like concerts, and occupancy at all Station Casino properties.

14.     These requirements were part of Station attendance policy. If we did not adhere to this policy I understood that I could be reprimanded, including a verbal warning, written warnings, and even termination. I believe I was given a "talking to" for not attending one pre-shift meeting, so I always made sure to go thereafter.

15.     Also, people were very afraid about getting time clock violations and even took pictures of the time clock to prove they had actually clocked in. It was a very big scare about clocking in because if you missed punching in you could be reprimanded and if you missed a certain number you could be fired. A few of my colleagues were actually fired, specifically Matthew (LNU) and Nick Rodriguez.

16.     I very rarely stayed later than my regularly scheduled end of shift time. I am unsure if that time was rounded off of my time card also.

17.     In addition to the pre-shift meetings we were also required to attend "All Team Meetings" and "Department Meetings" at least once a year. These meetings were usually held in a he theatre and were actually paid.

18.     Upon my own personal knowledge and belief all other dealers and non-exempt casino employees were required to follow these same procedures.

/ / /

- 3 -
DECLARATION OF ARTHUR F. COYNE

19.    I have read the Thierman Buck class action brochure and I understand my duties and responsibilities as a class representative on behalf of all others similarly situated.

I have read the forgoing statement consisting of this page and three (3) others and declare under the laws of the United States of America and the State of Illinois that the foregoing is true and correct.

Executed this ___4___ day of November 2016, in Elmhurst, Illinois.


Arthur F. Coyne

THIERMAN BUCK LLP
7287 Lakeside Drive
Reno, NV 89511
(775) 284-1500 Fax (775) 703-5027
Email info@thiermanbuck.com www.thiermanbuck.com

# EXHIBIT B

# *Employee Handbook*

# EXHIBIT B



# Beyond the Best sm
## Team Member Handbook

Welcome New Team Member!

On behalf of Station Casinos, we want to welcome
you and wish you every success here.

We believe that each Team Member plays an
important part of attaining our overall objective to
perform *"Beyond the Best"* and to *"Just Please the
Guest."* We take pride in you being a member of
our Team.

This Handbook was developed to describe some of
the expectations of our Team Members and to
outline the policies, programs, and benefits
available to those who are eligible. We encourage
you to review and refer to this Handbook because it
contains valuable information about your
employment with Station Casinos.

We know that your experience here will be
challenging, enjoyable and rewarding. Thank you
for joining our Team. We are pleased to have you on board.

Sincerely,

Frank J. Fertitta III
Chairman, President and CEO
Station Casinos, Inc.

# *"BEYOND THE BEST"*

# Your Station Casinos
# Team Member Handbook

July 2003

| | |
|---|---|
| Definition of a Serious Health Condition | Page 21 |
| "Health Care Provider" Means | Page 22 |
| Maintaining Health Benefits | Page 22 |
| Notice and Certification | Page 22 |
| Personal Leaves of Absence | Page 23 |
| General Information | Page 23 |
| **CONDUCT** | **Page 25** |
| Appearance | Page 25 |
| Association Policy | Page 27 |
| Attendance and Punctuality | Page 28 |
| Attendance Guidelines | Page 28 |
| No Call/No Show | Page 29 |
| Beepers/Cellular Phones | Page 29 |
| Company Property | Page 29 |
| Company Vehicles/Violations | Page 29 |
| Confidentiality Policy | Page 29 |
| Team Member Gambling | Page 30 |
| Responsible Gaming | Page 30 |
| Minors | Page 30 |
| Team Member Parking/Entrance Policy | Page 30 |
| Falsification of Records | Page 30 |
| Restroom Use Policy | Page 31 |
| Phone Use Policy | Page 31 |
| Security Related Policies | Page 31 |
| Guest Accidents | Page 31 |
| Inspections | Page 31 |
| Lost and Found | Page 31 |
| Monitoring and Surveillance | Page 31 |
| Removal of Unruly Guests | Page 32 |
| Smoking Policy | Page 32 |
| Substance Abuse/Testing Policy | Page 32 |
| General Rules of Conduct (House Rules) | Page 32 |
| Corrective Counseling | Page 34 |
| **COMPLAINT PROCEDURES** | **Page 37** |
| Team Member Complaint Policy/Procedure | Page 37 |
| Team Member Council Policy/Procedure | Page 38 |
| **SAFETY** | **Page 41** |
| Safety Policy | Page 41 |
| Reporting On-The-Job Accidents | Page 41 |
| Team Member Safety Rules | Page 42 |
| In Case of a Fire | Page 42 |
| In Case of an Emergency | Page 43 |
| **THANK YOU & HANDBOOK ACKNOWLEDGEMENT** | Page 45 |



## OUR COMMITMENT TO YOU!

Station Casinos, Inc. is fully committed to its most important resource -- you, our Team Member. As a result, the Company is dedicated to:

- Providing you with competitive wages, *"Beyond the Best"* benefits and excellent working conditions;

- Creating a *"Beyond the Best"* work environment;

- Treating you fairly, with care, dignity, and respect; and

- Recognizing your hard work, dedication and *"Beyond the Best"* effort and attitude.

Your Supervisors will do their best to demonstrate our strong commitment to our Team Members, address issues and concerns and alert you to opportunities for growth and advancement. We also encourage you to utilize our open door policy, which permits you to speak to all levels of management should the need arise, which includes Supervisors, Managers, Directors, Human Resources Representatives and the General Manager.

If you have questions or issues relating to your job, talk with your Supervisor who, in most cases, can advise you. In addition, your Department Manager and Director can further assist you as they have the necessary tools and resources relative to all aspects of your employment.

We believe that the most effective way to resolve all issues with our Team Members is through direct one-on-one relationships.

The central component of our commitment to non-Supervisory Team Members is the Company's assurance that non-Supervisory, non-introductory Team Members may receive corrective counseling or be terminated only for a good reason. Non-Supervisory, non-introductory Team Members may dispute complaints or corrective counseling using the Team Member Complaint process. Team Members who believe they were terminated without a good reason may challenge the decision during a hearing before a Team Member Council.

## INTRODUCTION

This Team Member Handbook cannot anticipate every circumstance or issue that may arise during the course of employment.  Please address any questions you may have directly to your Supervisor, Manager, Director or another member of management.  A Company representative will answer your questions and provide you with a clear explanation of this Handbook, or Company policies and procedures.

This Handbook will remain in effect unless the Company advises you, in advance, of a change.



## YOUR COMMITMENT TO US!

Our goal as a Company is to be *"Beyond the Best"* at all times. All Team Members are expected to follow our *"Beyond the Best"* standards in a positive, professional and courteous manner at all times. The way our Guests perceive the Company is most often based on their impression of YOU. Therefore, our *"Beyond the Best"* Standards will assist you in leaving a *"Beyond the Best"* impression on our Guests.

### Everyone Is a Guest
Appreciate and Respect Every Team Member.

### It Is My Job!
We are all on the same Team. Ensure our Guests are completely satisfied with their visit.

### 10/5 Rule
Every time a Guest or Team Member is 10 feet away
from you, make eye contact and smile. As they approach within 5 feet of you speak first
with a friendly greeting and call them by name (if known).

### Guest Opportunities
Resolve all Guest Opportunities before our Guests leave the property. Anticipate their needs and do the UNEXPECTED!

### Let Them Hear Your Smile
Put a smile in your voice! Be pleasant and enthusiastic.

### Be Alert!
EVERYONE'S safety is EVERYONE'S responsibility.

### Fond Farewell
Sincerely thank our Guests for their visit and invite them to return.

## Human Resources and You

It is our mission to provide a progressive environment in which all Team Members have an opportunity to enjoy their positions and grow in their careers. We are determined to be the *"Employer of Choice"* and are working diligently to that end.

Your Human Resources Team will provide you with service that is *"Beyond the Best"*!

Some of the areas where Human Resources take the lead are:

♦ Team Member Relations
♦ Benefits
♦ Wages and Compensation
♦ Communication, Recognition and Activities
♦ Work/Life Initiatives
♦ Loss Prevention and Workplace Safety
♦ Advancement Opportunities

You and your family are very important to us and we are committed to enhancing the quality of your life. We are constantly looking at new creative ideas, tools, and initiatives to offer you a balance between your work, life and family.

We are an innovative, dynamic Company with numerous talented and skilled Team Members. Human Resources is determined to capitalize on everyone's strengths and actively lead Station Casinos to be *"Beyond the Best"* through proactive involvement in all areas of operations.

## Training

Our training initiatives have propelled Station Casinos to be a leader in the gaming industry. We have created a unique training and development system that will ensure the development and support of our organizational culture as we grow. We involve the Executive Teams at each property to develop their active leadership skills and enhance our *"Beyond the Best"* culture through our Company-wide training programs.

Our *"Beyond the Best"* training initiatives have been specifically developed to meet the needs of Station Casinos from leadership development, guest service and on-the-job training. The training function supports all levels of the organization and everyone is welcome to participate.

We welcome you to the Station Casinos family!

## Station Casino's Position on Unions

Station Casinos strives to treat every Team Member with dignity and respect. In addition, we strive to provide competitive wages and benefits in a safe, clean and healthy environment. Every Team Member is encouraged to speak for him or herself on matters concerning his or her employment at Station Casinos. We do not feel the intervention of an outside third party is necessary.

We believe it is not in your or Station Casinos best interest to participate in union activities or sign union authorization cards. Under federal law, you have the right to join a union. But more importantly, you have the right NOT to join a union. We have always taken pride in solving our problems directly, dealing one-on-one with each other. We will strive to fulfill our philosophy and standard of fair practice.

We want you to be aware of Station Casino's position regarding unions.

## No Solicitation and Distribution

The following rules regarding distribution, solicitation and the sale of merchandise have been established in order to prevent interference with and disruption of work, to maintain our operations at peak efficiency and to avoid inconveniencing our Guests, and others with whom we do business. This policy applies to all Station Casinos, Inc. premises and any other premises, which are owned, controlled, or operated by Station Casinos, Inc. or its related entities.

Team Members are not permitted to solicit, distribute literature or sell merchandise to other Team Members during the "work time" of either person. Team Members may also not solicit or distribute literature, or sell merchandise at any time to Team Members, Guests or Vendors in the working areas of the hotel and casino such as the kitchen areas, front desk, and laundry or in areas which are open to the public such as the gaming areas and their adjacent aisle-ways and hallways and where such solicitation, distribution or selling would be disruptive or interfere with service to Guests or hotel/casino operations.

"Work time" includes all time during which a Team Member is assigned to or engaged in the performance of his/her role, but does not include breaks, meal periods, or other designated relief periods during which the Team Member is not assigned to or expected to perform any work.

Solicitation includes, but is not limited to, such activities as requesting charitable contributions, invitations to social events, advertisements for home sales parties, requests for support or money for any purpose (e.g., gifts, funerals, charities, religious or political organizations) or a communication with a Team Member, Guest or Vendor seeking to obtain support for, agreement with, or participation in a group, organization, cause or activity.

This policy does not apply to management directives, which may include, but are not limited to, supervisory or managerial communications to Team Members (including mandatory meetings) related to job instructions, procedures, or corrective counseling, Team Members' benefits, or Station Casinos-sponsored or Station Casinos-negotiated events or programs.

Any questions concerning the application or interpretation of this policy should be directed to the Human Resources Department.

## How We Communicate With You

Station Casinos uses many different vehicles to communicate with you. Below are many of the ways we ensure you are informed:

- Team Member Newsletters
- Internet
- Property Bulletin Boards
- Paycheck Attachments
- Memoranda
- Banners
- Public Announcements
- Table Toppers
- Benefits Meetings
- Home Mailings
- Training Sessions
- Team Member Focus Groups
- All Team Meetings

- Pre-shift Meetings
- Department Meetings
- Operations Meetings
- Meet the General Manager Meetings
- Suggestion Boxes
- E-mails
- Posters
- Performance Appraisals
- Team Member Television
- Team Member Handbook
- Celebration
- Open Door Policy
- Safety Committee/Suggestion Box

## Team Member Surveys – A Valuable Communication Tool

We value feedback from our Team Members and solicit feedback in the form of Team Member Satisfaction Surveys twice a year. In January and July, we all participate in a Team Member Satisfaction Survey process where all Team Members are encouraged to assess the quality of their property work environment. The surveys are sent to an independent consulting company that compiles the information and narrative comments to maintain the confidentiality of the survey participant. The results are shared with property leadership and Team Members. Then action plans are prepared to make improvements to our culture. Your feedback in this process helps us enhance our working environment.

6

## How We Recognize You

Recognizing our Team for their *"Beyond the Best"* effort is important to Station Casinos. That is why we use many different vehicles to recognize our Team Members. Below is a list of ways we may use to ensure that you are recognized for your contributions to our success:

- Champion Chips/Recognition Program
- Holiday Party
- Birthday Cards
- Children's Holiday Party
- Service Award Celebrations
- Certificates
- Stock Recognition
- Fun events for the Team Member and Family
- Company Publications

## Our Corporate Giving Philosophy

From its inception, our Company has taken an active interest in improving the quality of life in our communities. Making voluntary contributions to charitable organizations is one way in which we continue to make an investment in the future of our Company, our Team Members, their families and that of the community as a whole.

We also encourage our Company's officers and Team Members to become active in our STARS (Station Casinos **Team Members** Achieving **R**esults Through Community **S**ervice) program. The STARS program promotes volunteer service among Team Members and is combined with the Company's charitable giving in an effort to enhance the quality of life in our community. The program also encourages and assists our Team Members in becoming informed voters so they can become more active and influential in determining the outcome of issues that impact our industry, our jobs and the community.

STARS activities take place year-round and include participation in Team Member Voter Registration Drives, Smart Start elementary partnership programs, March of Dimes Walk America, the Greater Las Vegas Inner City Games and more. Whether it's education and youth, arts and culture, social diversity or working to meet basic human needs, we're committed to doing our part to help build and maintain great communities that we can all be proud to call home.

Please contact your property Human Resources Department to find out how you can become involved in the STARS program.

# Station Casinos History

**Growth —** After its origin as a one- property company, Station Casinos, Inc. became a publicly traded gaming corporation in May, 1993. Today, the Station family consists of casinos, hotels and gaming businesses in Nevada.

*Palace Station,* our flagship property, began in 1976 as The Casino with only a handful of slots and gaming tables. Since then, thanks to dedicated team members and innovative marketing, it has grown continually.

In 1977, it was renamed the Bingo Palace, and in 1979 Frank Fertitta, Jr. became the property's sole owner. In 1984 the property was remodeled and renamed Palace Station. It became a hotel/casino in 1985, with the purchase of a nearby 460-room hotel.

In 1990, the company built the first of two connecting towers making the hotel a high-rise resort.

In August, 1994, *Boulder Station* became the Company's first new property to open in Las Vegas, becoming the dominant property on the Boulder strip with 300 hotel rooms. The "guest-oriented culture" that had become a hallmark at Palace Station was transported across town.

Boulder Station's master plan includes a total of 1,500 rooms. Since opening, Boulder has added an 11-screen movie theater and Kids Quest, a supervised childcare facility. Boulder Station had the most successful opening of any locals property in the history of Las Vegas.

# EMPLOYMENT POLICIES

## Equal Employment Opportunity Statement

We are an Equal Opportunity Employer committed to a culturally diverse workforce in compliance with all applicable laws as well as moral and ethical standards of equality. We are proud to recognize each person as an individual and do not discriminate against applicants or Team Members because of race, color, religion, sex, national origin, age, disability, sexual-orientation or any other protected status under local, state or federal law. This policy extends to all persons in all aspects of the employment relationship including but not limited to, recruitment, hiring, promotion, termination, reduction in force, transfer, leaves of absence, benefits, compensation and training.

## No Harassment Policy

The Company is committed to providing a working environment free from harassment, intimidation, insult or other discriminatory conduct on the basis of an individual's race, color, religion, national origin, sex, age, disability, sexual-orientation or any other protected status under local, state or federal law.

The Company prohibits any form of harassment including sexual harassment of its Team Members by any individual(s) and will stop such harassment should it occur. Sexual harassment will not be tolerated by any Team Member toward another Team Member of the same or opposite sex regardless of the individual's position in the organization.

With respect to sexual harassment, the Company specifically prohibits:

1. Unwelcome sexual advances, requests for sexual favors, and all other verbal or physical conduct of a sexual or otherwise offensive nature, particularly where:
   a) submission to such conduct is made either explicitly or implicitly a term or condition of employment;
   b) submission to or rejection of such conduct is used as the basis for decisions affecting an individual's employment; or
   c) such conduct has the purpose or effect of creating an intimidating, hostile, or offensive working environment; and

2. Offensive comments, innuendoes, and other sexually oriented communications, or distribution or display of materials of a sexual nature; deliberate touching; leaning over or cornering; sexually suggestive looks or gestures; pressure for sexual favors; pressure for dates; sexual teasing; jokes; remarks; or questions.

This policy also prohibits:

Racial, religious or other harassment on any basis, which can include, but is not limited to the following:

   a) Use of derogatory language, labels, jokes, taunts, cartoons, pictures or drawings based upon, or making reference to, an individual's race, color, religion, sex, sexual-orientation, national origin, age, disability or any other protected status under local, state or federal law.

   b) Any derogatory action taken against another individual based upon or making reference to an individual's race, color, religion, sex, sexual-orientation, national origin, age, disability or any other protected status under local, state or federal law.

Each Team Member is responsible for creating an atmosphere free of discrimination and harassment, sexual or otherwise. Further, each Team Member is responsible for respecting the rights and dignity of their co-workers.

If you believe you are being harassed, the Company will support you in your pursuit of one or more of the following actions:

   a) If you are able to do so without conflict or danger, tell the harasser as clearly as possible that the behavior is unwelcome.

   b) If you are unable to communicate that the behavior is unwelcome or if the behavior continues, report the harassing behavior to your immediate Supervisor. If you are uncomfortable reporting the incident to your Supervisor, notify a member of the Human Resources Department or, in their absence, any member of the Executive Committee or a Department Director. When reporting the incident, clearly identify the behavior surrounding the complaint.

   c) Direct your feelings and comments only to the individual(s) officially investigating the complaint.

You are strongly encouraged to come forward and give the Company an opportunity to resolve your complaint at the earliest possible time. An investigation will be made of all complaints and appropriate corrective action will be taken. Your complaint will be kept confidential to the maximum extent possible. If the Company determines that a Team Member is guilty of harassing another Team Member, appropriate action will be taken against the offending Team Member.

The Company recognizes that false claims of harassment can be damaging to reputations and can cause as many problems as actual harassment. Therefore, action will be taken against those individuals found to be making false claims with the same seriousness as in cases of harassment.

The Company prohibits any form of retaliation against any Team Member for filing a complaint under this policy or for assisting in a complaint investigation.

## Job Posting / Advancement / Shift Bid Opportunities

within the current classification and department. Generally, you are eligible if you are classified as a full-time or part-time Team Member, have successfully completed your 90-day introductory period, are in good standing with the Company and in the case of transfers, meet the minimum requirements of the position. Once the Team Member is selected, she/he generally must remain in the new position for 90 days before again becoming eligible to submit another transfer/promotion request or bid on a new shift.

## Work Cards

All work cards, licenses and/or certification cards must be current and valid during your employment with the Company. It is your responsibility to renew your work cards prior to the expiration date. When you renew any of these cards, you must bring them to the Human Resources Department to update your personnel file:

- **Work Permits** must be obtained by all Team Members under the age of 16 from the appropriate juvenile authorities.

- **Alcohol Awareness Certification** is required of certain Team Members who work around or serve alcoholic beverages.

- **Resident Alien or Employment Authorization Cards** must be obtained by all resident aliens authorized to work in the United States.

- **Sheriff's Cards** issued by the local police department are required as a condition of employment for most Team Members. You must carry it with you at all times while on duty.

- **Health Cards**, where applicable, must also be obtained by certain Team Members. Check with your Department Manager. You must carry it with you at all times while on duty.

**Action** – Palace Station's "The Feast" was Las Vegas' first "action-buffet", a serve-yourself eatery with chefs cooking certain dishes to order. The concept - which has been replicated at Texas Station, Sunset Station and Boulder Station - helped The Feast earn best buffet honors in local polls.

*Barley's Casino and Brewing Company* is the first micro-brewery in Henderson/Green Valley. The authentic brew house was shipped directly from Germany, and produces 3,000 barrels of beer annually. Barley's offers three specialty lager brews to its Guests as well as a 200-seat café-style restaurant, a pizza kitchen, 199 slot/video poker machines, eight table games and a 50-seat sports book.

The *Wild Wild West Gambling Hall and Hotel* was acquired in 1998 and has an 11,000 square -foot casino with all of the latest slot machines and a live 21 pit with roulette and mini craps. The hotel has 260 rooms including 4 suites. Inside the casino are the Loose Trax Bar, sportsbook, cage, giftshop and the Gambler's Grill for family dining.

*Green Valley Ranch* is a partnership with the Greenspun family and opened in December 2001. Only minutes from the glamour and action of the Las Vegas Strip and McCarran Airport, you'll find the relaxed pace of Nevada's newest exclusive resort. Green Valley Ranch offers a world-class hotel with 201 hotel rooms, a European-style spa and a casino with 53 table games and over 2200 slots. Green Valley Ranch also has several options for entertainment with a 10 screen movie theater, the Whiskey Bar nightclub and a unique outdoor concert venue where the view, the music and the magical surrounding combine to make any entertainment experience memorable. In 2003, Green Valley Ranch was awarded the prestigious AAA 4 diamond award and has been featured on the Travel and Lifetime channels.



# COMPENSATION POLICIES

## Classifications of Employment

Various classifications of Team Members work at the Company, as follows:

- Full-Time Team Member - if you are scheduled to work **at least 32 hours** each week.
- Part-Time Team Member - if you are scheduled to work **less than 32 hours** each week.
- Extra Board/On-Call Team Member - if you work on an **"as needed"** basis only.
- Temporary Team Member - if you were hired to work for a **specific, limited period of time**.

## Team Member Work Hours

The workday for full-time Team Members is generally eight (8) hours. Various factors such as workloads, operational efficiency and staffing needs may require variations in a Team Member's starting or quitting times and total hours worked each day. The Company reserves the right to assign Team Members to jobs other than their usual assignments, when needed. Every department will schedule its Team Members according to its unique needs; therefore, be aware that your schedule may change from time to time.

## Recording Work Hours

Work hours are required by law to be accurately recorded every working day. Team Members may not punch in or sign in earlier than fourteen (14) minutes prior to shift start time and punch out or sign out more than fourteen (14) minutes after the end of the regularly scheduled shift unless the Team Member is scheduled to work before or after the shift by his/her immediate Supervisor. The fourteen (14) minute period before and after the shift is designed to provide orderly entrance and exit from the work location. Therefore, unless overtime work is scheduled and approved in advance, punches in or out during the fourteen (14) minute periods defined above SHALL NOT BE CONSIDERED TIME WORKED FOR OVERTIME COMPUTATION PURPOSES.

Team Members are not permitted to clock in/out or write down the working time of other Team Members; falsification of time records or improper recording of working time are grounds for termination. If time is improperly recorded, it must be brought immediately to the attention of your Supervisor.

## Meal Periods

For the convenience of the Company, Team Members are provided with meals and paid for their meal break time. Team Members are not to leave property during meal periods. If a Team Member must leave property during the **meal** period, prior permission must be first obtained from the Supervisor. The Team Member must then clock out, clocking back in upon return.

## Regular Pay Procedures

Station Casinos uses a two-week pay period. A schedule of the beginning and ending days of the pay periods is available at your Human Resources Office. You must show appropriate identification to receive your check at your property's designated location. If your paycheck is not at the designated location, you should contact your Supervisor.

**Corrections to your paycheck must be brought to the attention of your Supervisor or Department Manager.** Under normal circumstances, corrections will be made on the next issued payroll. If you lose your paycheck, you must notify the payroll office immediately.

## Direct Deposit

For your convenience, direct deposit is available. Provide a voided check or deposit slip to include your account number and complete a direct deposit form Human Resources will provide to you. Your check will automatically be deposited into your account that will be displayed on your paycheck stub. You are responsible to retrieve your direct deposit stub every pay week to ensure that deductions you have authorized are being deducted properly.

## Overtime Pay Procedures

To meet business schedules and needs, it may be necessary to require Team Members to work overtime.

Team Members will be paid overtime which meets or exceeds state and federal regulations. Paid vacation, paid holidays, and other paid absences from work are not considered time worked for overtime computation purposes.

## Tip Compliance

The Company has entered into a tip compliance agreement with the IRS that applies to all of our properties. Team Members who are hired into classifications that are subject to this agreement, will be advised of their tip reporting obligations.

## Introductory Period

All new Team Members serve an introductory period of ninety (90) days from their first day of employment. This is your opportunity to learn your new position and practice our *"Beyond the Best"* Company culture and Beyond the Best Service Standards.

During your introductory period, you are not eligible for Company paid benefits. Introductory periods may be extended by the Company or because of approved time off taken by the Team Member. The Company reserves the right to extend any Team Member's introductory period, but not for more than thirty (30) days. Upon successful completion of the introductory period, non-Supervisory Team Members may receive corrective counseling or terminated only for a good reason.

## Performance Review

To ensure that you perform your job to the best of your abilities, it is important that you receive appropriate feedback about your performance. Consistent with this goal, your performance will be evaluated by your Supervisor on an ongoing basis, beginning with the completion of your 90-day introductory period.

## Termination Procedures

If you resign or are terminated from employment with the Company, your final paycheck can be obtained in the Human Resources Department. In the event that you have been issued a uniform, keys or other Company property, you must return such property before your final check will be released. Each Team Member who is entrusted with Company property must execute a written authorization for such paycheck withholding.

Upon termination of employment, paycheck deductions may be taken for outstanding advances, Company property not returned by the Team Member and other legally permissible deductions, provided that such deductions are authorized in writing by the Team Member. Upon termination all earned and unused vacation hours will be paid. Unused floaters will not be paid.

**Goals** – Station Casino's "Beyond the Best" philosophy originated, appropriately, with the Company's Team Members. It started as "Service Beyond Belief", a marketing slogan put forth in a directors' brainstorming session. From there, Team Members in training modified the concept. To make "Service Beyond Belief" tangible and measurable, they changed the phrase to "Beyond the Best." "The Best" refers to the standards our guests and our competition have set. It's our job to go beyond them.

**Ingenuity** – Station Casinos is taking its marketing efforts to the internet. Web surfers can take a look at what each Station Casinos property has to offer, pick up some gaming tips and even sign up for their own Boarding Pass just by visiting the Station Casinos home page, www.StationCasinos.com.

**Promotion** – The Station Casinos family owes much of its success to innovative, high profile promotions like the popular "Car-A-Day in May" giveaway, which made its debut in 1985 and the "Great Giveaway Football Contest".

**Change** – Before it was Palace Station, our company's flagship property was known as The Casino, a 5,000 square-foot building, and later as The Bingo Palace. Today, the property is a hotel tower with 287,000 square feet of public space.



## "BEYOND THE BEST" BENEFITS

Station Casinos prides itself on offering you and your family a *"Beyond the Best"* benefits package designed to enhance your life and plan for your future. Listed below is a brief description of some of the benefits that are available to Team Members at Station Casinos.

❖ **Medical Insurance**
After 90 days of continuous employment, full-time Team Members are eligible to enroll in one of the most comprehensive health plans available. With low co-pays and generous coverage for medical procedures and prescriptions, the Station Casino's health plan can provide you and your family with access to a large choice of quality healthcare professionals.

❖ **Dental Insurance**
Included in the medical insurance is a comprehensive dental plan that covers a wide variety of dental expenses from preventative cleanings and basic dental care to full dentures. Station Casinos also covers orthodontia expenses for children.

❖ **Vision Insurance**
Included in the medical insurance is a vision plan that provides you with a set dollar amount to cover expenses for exams, glasses and/or contact lenses from your choice of any vision care provider in the country.

❖ **Life Insurance**
Included in the medical insurance is a term life insurance policy that provides your beneficiaries with up to one times your annual salary in the event of death. Also included is an Accidental Death & Dismemberment (AD&D) policy with additional benefits.

❖ **Voluntary Benefits**
Station Casinos is happy to provide you with access to voluntary benefit packages from some of the finest insurance companies in America. After 90 days of continuous employment, full-time Team Members can choose from additional term life insurance, whole life insurance, short-term disability insurance and/or a legal expense plan.

❖ **401(K) Retirement Plan**
Station Casinos is doing our part to help you plan for the future with our 401(k) Retirement Plan. All full-time and part-time Team Members are encouraged to enroll after 90 days of employment. Highlights of the plan include a generous matching contribution, 24-hour account access and a variety of investment options.

❖ **Stock Purchase Plan (Not available to GVR Team Members)**
Owning part of the Company is an excellent way to take pride and reward yourself for the job you do. Station Casinos provides Team Members with an option to purchase Company stock through payroll deductions without any commissions.

## NON-TRADITIONAL BENEFITS

❖ **On-Site Childcare**

Many of the Station Casinos properties offer our Team Members access to 24-hours-a-day, 365-days-a-year childcare located right on property. These world-class childcare facilities are convenient and provide your children with an educational environment not found in most traditional day care centers.

❖ **Tuition Reimbursement**

Station Casinos encourages you to continue your education. After one year of employment, full-time Team Members can have approved educational expenses reimbursed at up to $500 per year.

❖ **Team Member Assistance Program (TMAP)**

To assist our Team Members and their families with personal problems, we offer a Team Member Assistance Program that provides professional counseling assistance. The TMAP is designed to help solve Team Member problems before they worsen. Your counselor can help you confidentially deal with: Marriage and Family Conflicts, Child and Adolescent Problems, Single Parenthood, Stress and Anxiety, Depression and Grief, Gambling Problems, Alcohol Problems, Drug Problems, Financial Troubles and any other personal problems.

In addition to the non-traditional benefits listed above, Station Casinos also offers the following:

❖ **Section 125 Dependent Care Program**

❖ **Scholarship Award Program**

❖ **Stock Recognition Program**

❖ **Credit Union**

❖ **Team Member Meals**

❖ **Team Member Discounts**

❖ **Team Member Value Book**

❖ **On-site Training**

❖ **and much more!**

The information above is intended only as a brief description of the benefits available. Certain restrictions may apply and programs are subject to change. For complete information, please contact your Human Resources Department.

## TIME OFF BENEFITS

### Paid Vacation

Eligible full-time Team Members receive paid vacation time. Paid vacation eligibility is calculated from the Team Member's anniversary date. Vacation hours not used before the next anniversary date may not be carried forward to the following year. Vacation hours may only be taken when earned. Payment in lieu of vacation is not allowed.

Full-time, non-Supervisory Team Members who have twelve (12) months of continuous Company service are entitled to paid vacation according to the following schedule:

| Years of Service At Anniversary Date | Annual Vacation Allowance |
|---|---|
| 1 year of service - hourly | 1 week |
| 2 – 5 years of service | 2 weeks |
| 6 – 11 years of service | 3 weeks |
| 12+ years of service | 4 weeks |

Part-time, non-Supervisory Team Members who have twelve (12) months of continuous Company service are entitled to paid vacations based on hours worked.

### Vacation Schedules

Vacation or floating holiday time must be pre-approved by your Supervisor. The number of Team Members from each department who will be scheduled for time off during any period will depend upon the business needs of the department. When possible, vacation time may be granted on a "day-at-a-time" basis.

A vacation schedule is circulated near the beginning of each year, during this time; Team Members may request either vacation or "floating holiday" time for the remainder of the year. During the initial scheduling period, such requests are granted solely on the basis of seniority with the Company.

Time off not scheduled during the initial scheduling period is next granted strictly on a "first come, first served" basis, and dependent upon the needs of the business. Such requests should be scheduled at least thirty (30) days in advance of the desired time off. If more than one Team Member applies for vacation or floating holidays during the same period, and both can not be given time off, the date the request was submitted may be used by the Supervisor to determine which Team Member's request will be approved.

It may be necessary for some departments to block certain periods of time throughout the year, e.g. holidays, when vacation cannot be taken to assure that we are able to provide *"Beyond the Best"* service at all times.

## Paid Holidays

To be eligible for holiday pay, you must have completed ninety (90) days of continuous employment with the Company and work both your regularly scheduled workdays before and after the actual holiday. Eligible full-time Team Members receive paid holidays. Eligible part-time Team Members will receive holiday pay based on the number of hours worked.

The Company recognizes the following holidays:

*Memorial Day  *Christmas Day   *Labor Day   *Independence Day  *Thanksgiving Day

Station properties may observe three additional "floating" holidays for hourly Team Members, which may be used with prior approval anytime during the calendar year. Floating holidays are granted depending upon the needs of the business; may not be carried over from year to year and will not be paid upon departure, if not used.

Full-time, non-Supervisory Team Members who are off on a designated holiday will receive eight (8) hours pay at their regular hourly wage rate. Hourly Team Members, who work on a designated holiday, will receive eight (8) hours holiday pay, plus pay at their regular rate for hours actually worked. If a Team Member was scheduled at least one week in advance of a holiday to work on that holiday and fails to report to work, he/she will not receive any holiday pay.

Team Members during the introductory period and Team Members on a leave of absence (not covered by the Family and Medical Leave Act) are not eligible for holiday or floating holiday pay.

## Bereavement Leave

After 90 days of employment, all Team Members are eligible for paid bereavement leave in the event of a death in the immediate family for a maximum of three (3) regularly scheduled workdays. Immediate family is defined as parent, stepparent, spouse, child, son-in-law, daughter-in-law, stepchild, sibling, sibling's spouse, grandparents, grandchildren, spouse's parents, spouse's siblings or spouse's sibling's spouse. Appropriate documentation is required.

## Jury Duty / Witness Duty

The Company recognizes that it is the Team Member's civil duty to report to jury duty. You must report a call for jury duty immediately to your Supervisor.

If you are a full-time Team Member with at least one (1) year of employment and you are summoned to jury duty, the Company will pay the difference between your regular salary (not including tips) and the amount you receive from the court (excluding any transportation allowance you may receive) one time during any three (3) year period up to a maximum of two (2) weeks. If you do not qualify, you are given time off without pay while on jury duty. All Team Members are allowed paid time off if summoned to appear in court as a witness for the Company.

**Military Leave of Absence**
Team Members on active or reserve duty with United States Armed Forces are granted military leave and given all other rights as established by law.

**Occupational Injury Leave of Absence**
Any request for a leave of absence for an injury, which is work related, requires a statement of disability from a licensed physician. An unpaid leave of absence will be granted for the period of time that the physician states the Team Member is unable to perform regular duties.

Benefits for work-related injuries and/or occupational diseases are provided in accordance with state law. If you are injured or become ill on the job, you must immediately report such injury or illness to your Supervisor or you are at risk of losing your Worker's Compensation benefits.

**Leave of Absence Covered by Family & Medical Leave Act**
The Family and Medical Leave Act (FMLA) allows Team Members to balance their work and family life by taking unpaid leave for certain situations. Family & Medical Leave is designed to balance the business needs of Station Casinos with the needs of our Team Members and their families.

*Eligibility*
To be eligible for FMLA benefits, a Team Member must:
♦ Have worked for Station Casinos for at least a total of twelve (12) months.
♦ Have worked at least 1,250 hours over the prior twelve (12) months.

*Leave Entitlement*
Station Casinos must grant an eligible Team Member up to a total of 12 weeks of unpaid leave during any rolling 12-month period for one or more of the following reasons:
♦ The birth or placement of a child for adoption or foster care;
♦ To care for an immediate family member (spouse, child, or parent) with a *serious health condition*; or
♦ To take medical leave when a Team Member is unable to work because of a *serious health condition*.

*Definition of a "Serious Health Condition"*
♦ Any period of incapacity or treatment connected with inpatient care (e.g. an overnight stay) in a hospital, hospice, or residential medical-care facility;
♦ Any period of incapacity requiring absence of more than three calendar days from work, school, or other regular daily activities that also involves continuing treatment by (or under the supervision of) a health care provider; or
♦ Continuing treatment by (or under the supervision of) a health care provider for a chronic or long-term health condition that is incurable or so serious that, if not treated, would likely result in a period of incapacity of more than three calendar days, and not for prenatal care.

### *"Health Care Provider" means*
- Doctors of medicine or osteopathy authorized to practice medicine or surgery by the state in which the doctor practices; or
- Podiatrists, dentists, clinical psychologists, optometrists and chiropractors (limited) authorized to practice, and performing within the scope of their practice, under state law; or
- Nurse practitioners and nurse-midwives authorized to practice, and performing within the scope of their practice, as defined under state law; or
- Christian Science practitioners listed with the First Church of Christ, Scientist of Boston, Massachusetts.

### *Maintaining Health Benefits*
Station Casinos Team Members on a Family and Medical Leave of Absence, who have coverage under the Station Casinos Health Plan, will need to make the regular monthly contribution to continue coverage during their absence. Information on when and how to make your contributions is available in your Human Resources office.

### *Notice and Certification*
All leave of absences under the Family and Medical Leave Act must be approved by the Human Resources Department. Team Members requesting a leave of absence under the Family and Medical Leave Act shall be required to provide Human Resources with:
- 30-day advance notice of a Team Member's need to take FMLA leave when the need is foreseeable;
- Medical certifications supporting the need for a leave of absence due to a serious health condition that affects the Team Member or an immediate member of the Team Member's family;
- Reports from the Team Member regarding the Team Member's status and their intent to return to work.
- A medical certification from a health care provider stating that the Team Member is able to return to work after an absence of three (3) or more consecutive days due to a serious health condition.

Team Members are required to use all accrued vacation or floating holiday time for any part of the 12-week mandated period. Team Members who fail to return to work at the end of their designated FMLA period, without management's approval of an extension, will be deemed to have resigned.

Upon return from a Family and Medical Leave as described above, you will be returned to the same or an equivalent position with the same benefits, terms and conditions of employment you had prior to taking your leave.

Please contact your Human Resources Department for additional information on the Family & Medical Leave Act.

## Personal Leaves of Absence

A Team Member with at least ninety (90) days of continuous service who has an urgent personal need not covered by other leave policies may apply for a personal leave of absence for an unpaid period of time up to thirty (30) days. Personal leaves of absence are granted at the sole discretion of the Company. The Company, when making a decision to grant such time-off, will consider the reason(s) for the request, the Team Member's length of service, attendance, corrective counseling records, the effect of the Team Member's absence on business operations, and/or the frequency and duration of previously granted periods of time off.

Up to three (3), thirty (30) day periods may be granted with the approval of the Director of Human Resources and General Manager for urgent and extreme circumstances, e.g. terminal illness. Unless otherwise required by law, no combination of leaves of absence provided in this Handbook may exceed six (6) months in a twelve- month rolling period. Team Members unavailable to return to work following the expiration of approved leaves of absence will be deemed to have resigned. Any earned vacation or floaters must be used prior to taking an unpaid Leave of Absence.

Leave requests should be made at least thirty (30) days in advance of the date the Team Member would like the leave to begin or, in emergency situations, with as much advance notice as is practicable.

## General Information

Team Members on any leave are not entitled to holiday pay for those holidays falling during the leave. Additionally, vacation time, if applicable, will accrue only during the first thirty (30) days of a leave of absence.

Unless otherwise required by law, the Company is under no obligation to hold your job open for you while you are on a personal leave of absence. When you are ready to return to work from your leave, we will attempt to place you in the same position you occupied before the leave. When that is not possible, you will be placed in the first available job for which you are qualified. If no job for which you are qualified is available when you return from leave, you will be terminated. If you are offered a job for which you are qualified and accept it, you will be paid at the rate set by the Company for that job. If you are offered a job for which you are qualified and refuse it; or if you accept other employment during your leave; or if you fail to return to work, you will be considered to have voluntarily resigned your employment. The expiration date of your leave will be used as your termination date.

**Future –** The Palace Station Master Plan includes a total of 2,200 hotel rooms, additional public space and other entertainment amenities.

**Originality –** Barley's Casino and Brewing Company in Henderson offers three specialty brews that are created over a 30-day process in the property's on-site brewery.

**History –** The style of Spanish architect Antonio Gaudi (1852-1926) is featured in the Mediterranean-themed Sunset Station. Gaudi's style, which features extensive curves, no right angles and fragments of broken glass, is most prominent at the property's Gaudi Bar. The watering hole even serves its drinks in curved glasses.

**Partners –** The Team Members at Texas Station are committed to helping their neighbors in northwest Las Vegas. The property donates time and money to nearby C.P. Squires Elementary School, which is located in a low-income neighborhood and serves many low-income or homeless families. This partnership was the beginning. Now every Station Casino property has developed a partnership with a neighborhood school.



# CONDUCT

## Appearance

Your appearance is an important part of the Company's overall image. Maintaining a high standard of grooming and personal hygiene is essential. You are expected to be in full, clean uniform, or other appropriate business attire, upon entering Company work areas with your name tag/ID badge on and ready for work. In addition, you are expected to adhere to the appearance standards described below.

Violation of the appearance standards or policy may result in corrective counseling.

## MALE AND FEMALE TEAM MEMBERS

### Hair

Styles or colors must be professional. Hair must be clean, neat and well kept. Hair colors must be a "natural color" defined as one that could be grown naturally (though not necessarily the natural color). No unnatural/colored streaks or sparkles in hair.

### Cologne/Perfume & Fragrances

If used, they must be subtle and applied in moderation.

### Casual Attire

Casual attire such as sweat suits is not permitted, unless prior authorization is given by the Department Director. Tight, form-fitted clothing is not permitted. No baggy pants are permitted. Only a natural waistline may be worn.

### Tattoos

Visible tattoos are not permitted. Tattoos revealed by uniforms are to be completely covered by appropriate make-up and invisible to the human eye.

### Badges

The Company name badge must be worn at all times in plain view on the upper torso.

### Buttons

Team Members may wear promotional buttons in public areas only when distributed by the Company or when there is a legal right to do so.

### Hats

Hats are not permitted unless distributed by the Company.

## MALE TEAM MEMBERS

### Facial Hair
Facial hair must be kept neatly trimmed and groomed and not to exceed one-half
(½) inch. New facial hair must be grown while on vacation or other approved
time off. Hair length should not extend beyond the top of the collar while facing
forward.

### Fingernails
Must be clean, well manicured, and no more than ½ inch from the cuticle and uniform in
length. Only clear polish is acceptable. Nail charms are not permitted.

### Pants
Any pants with belt loops must be worn with a belt.

### Jewelry
Visible body piercing, including tongue studs, is not permitted; males can wear one
earring per ear. Bandages to cover body piercings are not permitted. Rings are allowed
up to two (2) per hand. One visible necklace of one strand and one bracelet per wrist is
permitted. All jewelry must be worn in good taste.

### T-shirts
When worn as an undershirt, must not be visible.

### Socks
A dark shade of socks must be worn at all times.

### Shoes
Shoes must be clean and kept in good repair. Black is the only acceptable color for
uniformed Team Members.

## FEMALE TEAM MEMBERS

### Make-Up
Must be used in a conservative and professional manner.

### Fingernails
Must be clean and no more than (1) inch from the cuticle. Nail polish colors must be in
good taste and complement your attire. Nail charms are not permitted.

### Jewelry
Visible body piercing, including tongue studs or navel piercing, is not permitted
except for one small ring or stud per ear. Earrings may not exceed the circumference of a
quarter coin. Bandages to cover body piercings are not permitted. Rings are allowed, up
to two (2) per hand. One visible necklace of one strand and one bracelet per wrist is
permitted. All jewelry must be worn in good taste.

26

## Skirts & Skorts
Permitted to be three (3) inches above the knee to the bottom of the calf. Items with belt loops must be worn with a belt.

## Pants
Any pants with belt loops must be worn with a belt. Pants must be ankle length. Stretch or spandex pants are not permitted.

## Hosiery
Full-length hosiery must be worn at all times when wearing a skirt, skort or dress.

## Shoes
Shoes must be clean and kept in good repair. Black is the only acceptable color for uniformed Team Members. Strapless shoes/sandals are permitted in certain departments.

> **THIS IS A GENERAL APPEARANCE POLICY AND IS NOT AN EXHAUSTIVE LIST. STANDARDS WILL BE PERIODICALLY CHANGED TO KEEP UP WITH STYLES. THERE MAY BE ADDITIONAL GUIDELINES THAT COULD RESTRICT OR RELAX THESE POLICIES WITHIN YOUR DEPARTMENT; PLEASE CHECK WITH YOUR DEPARTMENT SUPERVISOR.**

## Association Policy
In an effort to provide an atmosphere of professional business practices among all Management/Supervisory, salaried and hourly personnel, the Company has adopted an Association Policy to help eliminate any appearance of favoritism, collusion and breaches of confidentiality. Team Members who are related, dating, married or cohabiting may not work in a Supervisor/subordinate relationship. For purposes of this policy, a relative is a spouse, child, parent, sibling, grandparent, grandchild, aunt, uncle, first cousin or corresponding in-law or "step" relation. Cohabitants shall be defined as persons who share mutual living quarters.

In addition, executive management reserves the right to enforce this policy in situations within the Company if a conflict of interest is deemed to exist.

Team Members who become related, begin dating, marry or begin cohabitating are obligated to immediately inform their Supervisor and may be transferred if it is deemed by the Company to be a conflict of interest.

## Attendance & Punctuality

Remember, we are a 24-hour operation; all schedules are made to fit the needs of our business. All Team Members are expected to report to their appropriate workstations at the designated start time. You must be ready to resume work on time after authorized break and meal periods.

If you are going to be absent for any reason, it is your responsibility to personally telephone your immediate Supervisor or Department Director at least four (4) hours prior to start time. (Calls from any individual other than the Team Member are not permitted except in emergencies.) If you realize that you will be late for your starting shift time, notify your Supervisor when you will be able to report for work.

Attendance is a critical issue at Station Casinos and its importance must be fully understood by all Team Members. The Company uses "incidents" as a basis for monitoring the absenteeism level of each Team Member.

## Attendance Guidelines
1) Incidents may occur through the following actions:
   a) Absence (one or more consecutive days)
   b) Improper call-out
   c) Tardy
   d) Team Member requested early-outs, or
   e) Any combination thereof.

A Team Member receives one (1) incident each time one (1) of the above actions occurs.

2) A Team Member's accumulation of any three (3) incidents within any rolling ninety (90) day period results in:
   a) First offense – verbal warning. Each additional incident after the first three will result in progressive counseling.
   b) Second offense – written warning
   c) Third offense – final warning
   d) Fourth offense – termination

Absences of more than three (3) consecutive days are not permitted unless the Team Member has received an approved Leave of Absence. If a serious health condition prevents a Team Member from returning to work, the Team Member must provide a medical certification for a Family Medical Leave of Absence within fifteen (15) days. FMLA leaves of absence that have been medically certified by a health care provider will not count as incidents under the Company's Attendance Guidelines. A Team Member absent for more than three (3) consecutive days, without obtaining an approved leave, will be deemed to have voluntarily resigned. The Company reserves the right to request a medical release for any absence. If absent for more than three (3) consecutive days, a medical release to return to work will be required prior to returning to work. The medical release does not excuse an absence, but is simply a statement of the Team Member's ability to return to work.

## No Call / No Show

If a Team Member does not report for any one (1) shift, and does not personally call the Supervisor, Manager or Department Director to report the absence, the Team Member is considered to have voluntarily resigned.

You may contact the Human Resources Department for further details on the complete Attendance Policy.

## Beepers / Cellular Phones

Only Company authorized beepers, pagers, or cellular telephones to be used for Company business are permitted while on duty.

## Company Property

Team Members are expected to exercise due care when using Company property and to utilize such property only for authorized business purposes. Negligence in the care and use of Company property, unauthorized removal of Company property from the premises without a "back-door" pass, or its conversion to personal use is prohibited.

Company property issued to you should be returned to the Company at the time of termination of employment or when requested by a Supervisor or Department Manager. The value of any property issued and not returned may be deducted from your paycheck; as discussed in "Termination Procedures"; the Company must receive a written authorization from the Team Member prior to making deductions from wages. You must sign an acknowledgment that you are responsible for returning uniforms and other Company property.

The Company assumes no responsibility for loss or damage to personal property of a Team Member.

## Company Vehicles / Violations

Lawful, safe and careful driving is required at all times in Company vehicles.

## Confidentiality Policy

It is the policy of the Company to ensure that the operations, activities and business affairs of the Company and its clients/Guests are kept confidential to the greatest possible extent. If, during the course of your employment, you acquire confidential information or proprietary information about the Company, its Guests and/or clients, such information is to be handled in strict confidence and is not to be discussed with outsiders. Team Members are also responsible for the internal security of such information. The disclosure of material, non-public information to others can lead to significant penalties, both for the Team Member and the Company.

## Team Member Gambling

All current Team Members are required to read and sign an acknowledgment form to indicate their understanding and compliance with our Company's Gambling Policy. All new Team Members are required to do the same at Celebration. See page 44 for detailed questions and answers on the Team Member Gambling policy.

## Responsible Gaming

Station Casinos recognizes that problem gambling can have a detrimental effect on the lives of our Guests, Team Members and ultimately our community. It is our goal to be a responsible corporate citizen and provide tools and resources to our Team Members and Guests to prevent and treat problem gambling.

If you have additional questions or concerns about Responsible Gaming, please go to your Human Resources Department.

## Minors

Nevada laws prohibit anyone under the age of 21 to be in the casino or lounge area to gamble, consume alcohol, or loiter in gaming and bar areas, even when accompanied by an adult. Any Team Member who violates or permits the violation of these laws is also guilty of a misdemeanor and can face arrest, fines, and the revocation of his/her gaming or non-gaming work card.

All Team Members in all departments, in addition to Security personnel, are responsible for helping to enforce these laws, including verifying ages of Guests and asking minors to leave gaming or liquor areas. Problems or questions should be directed to and handled by Security.

## Team Member Parking / Entrance Policy

You may park in designated Team Member areas only and must enter and exit the building through the designated Team Member entrance. Remember to be courteous in the Team Member parking lots. Observe traffic signs and speed limits as well as pedestrian right-of-way rules. Lock your car, remove any valuables, and take all safety precautions when walking to and from your car. Upon request, the Company will provide a security escort for Team Members to and from their vehicles. Station Casinos is not responsible for any theft or vehicle damage.

## Falsification of Records

Falsifying any Company records, or other reports, including statements made, or information omitted, on employment applications and other Company documents or forms, is strictly prohibited and may result in termination.

## Restroom Use Policy

To ensure quality service to our Guests, Team Members should use only restroom facilities designated for Team Members. Use of Guest restrooms is not allowed unless authorized at the property. The Team Member designated break areas and Team Member dining room are the only areas for breaks and relaxation.

## Phone Use Policy

Casino courtesy telephones (including pay phones) are reserved for the use of our Guests. Team Members may not make or receive personal calls while on duty except in the case of an emergency.

## Security Related Policies

To ensure compliance with policies, laws and regulations, and to secure a safe and protected work environment for Team Members and Guests, the following Security related policies apply to all Team Members.

- **Guest Accidents**

  Whenever an accident occurs to a Guest, Security must be notified immediately, then your on duty Supervisor. An accident report must be completed for every Guest accident. Details of Guest accidents should never be discussed with fellow Team Members or with any other Guest. No statements about blame or responsibility should be made.

- **Inspections**

  The Company reserves the right to inspect Team Member lockers, personal property or personal vehicles on Company property or in designated areas, packages, or any other objects brought onto or being taken from Company property. Failure to fully cooperate with such inspections is subject to corrective action, up to and including termination.

- **Lost And Found**

  All lost and found items must be immediately turned in to the Security Office. Certain departments may have lost and found policies regarding the handling of coins and currency.

- **Monitoring/Surveillance**

  The Company utilizes electronic surveillance and retains the right to randomly monitor movement and activity on the property, correspondence, written documents, voice-mail, telephone conversations/usage, e-mail, radio transmissions, and other electronic messages. Accordingly, during the normal course of operations Team Members are monitored or observed from time-to-time and should make no assumptions of privacy. Tampering with surveillance or security equipment, taking measures to avoid observation or monitoring, or interfering with security or surveillance activities, is strictly prohibited and subject to corrective counseling, up to and including termination.

31

- **Removal of Unruly Guests**
  If a Guest becomes unruly at any time, contact management immediately. It may be necessary to contact Security, but that decision should be left up to management.

- **Smoking Policy**
  Team Members on duty and/or in uniform may smoke in designated smoking areas only.

- **Substance Abuse / Testing Policy**
  Because substance abuse and its attendant problems affect productivity, safety, performance, absenteeism and health, it is the Company's right, obligation and intent to maintain, through drug testing, education and counseling, a safe, healthy, and efficient working environment. The Company's Substance Abuse Policy is also a means to protect Team Members, Guests, the Company's property, business, reputation, equipment, and operations. This policy applies to the use, possession, distribution and transfer of mind or behavior altering substances, sale of drugs (controlled substances), and/or alcohol on the premises.

  Any Team Member who refuses to submit to a drug/alcohol test when requested or refuses to sign the Company's drug/alcohol testing authorization form will be treated as a positive test result and may be subject to one of more of the following consequences:

  1. Placement on suspension from work pending investigation;
  2. Suspension or forfeiture of worker's compensation benefits;
  3. Corrective Counseling up to and including termination of employment.

> MANAGEMENT RESERVES THE RIGHT TO USE VARIOUS METHODS TO DETERMINE COMPLIANCE WITH ITS SUBSTANCE ABUSE-FREE WORKPLACE POLICY. YOU MAY REQUEST A COPY OF OUR POLICY IN ITS ENTIRETY FROM THE PROPERTY/CORPORATE HUMAN RESOURCES OFFICE.

## General Rules of Conduct (House Rules)

In any employment relationship, mutual trust and respect are built upon dignity and high moral character. The following list of Team Member rules of conduct is provided so that you may have some examples of conduct the Company considers appropriate. Violation of any of these rules, though the list is not all-inclusive, may lead to corrective counseling. Certain incidents may result in the imposition of corrective counseling, up to and including termination.

### 1. *Interaction with Guests*
- Courteous behavior to our Guests and fellow Team Members, regardless of their demeanor, is of the utmost importance. Be thoughtful and considerate of our Guests and fellow Team Members.
- Provide excellent Guest service without expecting a gratuity, tip or "toke" or in any way indicating to the Guest that one is desired.
- All Team Members must maintain what management judges to be a *"Beyond the Best"* attitude while on duty.
- Chewing gum while on duty, in uniform and/or in direct contact with Guests is not permitted.

### 2. *Coming To and From Work*
- Be available at your workstation during work hours leaving only with your Supervisor's approval. Ask your Supervisor about your break schedule and what facilities you may use.
- Report to work for all scheduled shifts on time, in proper uniform, wearing your name badge and with required work cards.
- Report to your assigned work area at the start and end of shifts, breaks, and/or meal periods on time and ready to work.
- Check or sign only yourself in and out.
- Wear uniforms only during working hours and when coming to and from work.
- Park only in designated areas for Team Member parking.

### 3. *Work Performance*
- Always perform your work as assigned by your Supervisor.
- Be alert and attentive in your duties (sleeping while on duty is prohibited).
- Unexcused or excessive absences and/or tardiness are prohibited.

### 4. *Honesty*
- Be honest at all times in the performance of your job duties.
- Do not falsify Company records or documents of any sort at any time.

### 5. *Conduct*
- Treat all fellow Team Members, Company property and equipment with care.
- Maintain the highest level of conduct at all times. Acts of willful misconduct are prohibited.
- As a member of the Company Team, your performance on and off the job is a reflection of the Company. Soliciting, procuring, or engaging in immoral or illegal acts on or off Company premises, or contributing to such acts is prohibited.
- Lending money to, or borrowing money from, Guests or other Team Members is prohibited.
- Any violation of the Team Member Gambling Policy is prohibited.

### 6. *Safety*
- Follow all safety rules and regulations and alert management to any hazardous or unsafe working conditions, including but not limited to the alteration or removal of safety features or devices.
- Operate machines, tools, or equipment safely, with proper safety equipment and authorization.

### *7. Violence*
- ◆ Possession or use of firearms, ammunition, knives, weapons, or illegal drugs while on Company premises at any time or the failure to report the knowledge of them is strictly prohibited.
- ◆ Violence or horseplay in the workplace with fellow Team Members or Guests is not permitted.

### *8. General Policies*
- ◆ Obey instructions of Supervisory personnel at all times.  Insubordinate behavior will not be tolerated.
- ◆ Follow all departmental policies, procedures and regulations, as well as each property's established rules.
- ◆ Do not commit acts in violation of the Company's No Harassment or Equal Employment Opportunity Policies.
- ◆ Adhere to Company Substance Abuse/Testing Policy.

### *9. Miscellaneous*
- ◆ Only use telephones in designated break areas while on duty.
- ◆ Do not smoke in non-designated or Guest areas.
- ◆ Report and turn in to Security any found items or property belonging to the Company, Guests, or fellow Team Members.
- ◆ Tampering with surveillance or security equipment, taking measures to avoid observation or monitoring, interfering with security or surveillance activities, or failing to cooperate with Security or Surveillance inspections or investigations is strictly prohibited.

## Corrective Counseling

A goal of any corrective counseling is to establish a mutual understanding between the Company and a Team Member with an agreement from the Team Member that future rule violations will not occur and that future performance will be acceptable.

Team Members who violate established rules and regulations, fail to perform their jobs according to the accepted standards, or who otherwise conduct themselves in a manner, which is detrimental to the Company, the Company's Guests, clients, or to other Team Members are subject to corrective counseling up to and including termination.

Additionally, conviction of any felony will be presumed to adversely impact the Company's reputation and ability to properly serve the public.  Conviction of a felony or a misdemeanor will be reviewed on a case-by-case basis, and depending upon the seriousness of the offense, the impact on Company operations, the Team Member's continued availability for work, and the Team Member's job responsibilities will be subject to counseling/discipline as appropriate at management's sole discretion.

Failure to abide by the policies listed above may result in corrective counseling, up to, and including termination.

34

**Innovation** — Station Casinos owes much of its success to innovation. The Company was the first to introduce games like the Reversible Royals video poker and "Car-A-Day in May" giveaway, the "Great Giveaway Football Contest" and more. Stations also created the mobile change cart, a standard service tool in the industry today. Change makers had to carry 20 to 30 pounds of change in a waist belt before a former Station's Team Member created the industry's first cart in his back yard.

*Sunset Station*, located in the Green Valley/Henderson area outside Las Vegas is targeted to capitalize on its location in the middle of the rapidly growing commercial corridor on Sunset Road. The groundbreaking and commencement of construction took place in the fourth quarter of 1995, and the property opened in the summer of 1997 with a Mediterranean theme. The 500-room hotel/casino also houses a 12-screen movie complex. The master plan includes a total of 1,700 hotel rooms, casino, restaurant, and entertainment facilities.

In November, 2000, *Santa Fe Station* became the Company's newest property to open in northwest Las Vegas. With more than 61,000 square feet of casino space, 200 hotel rooms, restaurants, and bowling center. Santa Fe Station continues the Company's "Beyond the Best" philosophy in providing guests with a total entertainment experience. Santa Fe Station's northwest location also continues the Company's dominance in the locals gaming market.



**Quality** ~ Residents of Las Vegas have continually acknowledged Station Casinos for its superior guest service in areas ranging from food service to casino promotions. Over the last 15 years Station Casino properties have received more than 131 awards in the Las Vegas Review Journal's annual "Best of Las Vegas" Readers' Poll.

Station Casinos acquired *Texas Station* in July 1995, enhancing its strategy as the dominant player in the Las Vegas locals market. Located in the "Golden Triangle" of North Las Vegas, the 200-room casino/hotel features a newly expanded casino, new restaurants, bars and the food district with quick-serve outlets. Texas Station also has an 18-screen movie theater complex. And, with over sixty-five million dollars in expansion in 2000, Texas Station features new games, new machines and new restaurants and bars including Austins, the most relaxed, upscale steakhouse in Las Vegas, the Texas Star Oyster Bar, and the "A-bar." Texas Station has also added a new conference center, the Dallas Events Center, wedding chapels and the Texas Bowling Center, a state-of-the-art bowling facility.



# TEAM MEMBER COMPLAINT AND COUNCIL PROCEDURES

## Team Member Complaint Procedure

It is the intent of the Company to conduct our day-to-day relations with Team Members in a fair and consistent manner. We urge you to speak up and voice any concerns you may have to appropriate management personnel. Non-Supervisory Team Members who have successfully completed the introductory period are encouraged to utilize the following procedure:

## Step 1 - Supervisor

The Team Member is encouraged to discuss the concern with his/her immediate Supervisor. After investigating the matter, the Supervisor will provide an answer, whenever possible, within seven (7) calendar days. If the Team Member wishes to appeal the decision, the Supervisor will direct the Team Member to the Department Manager.

## Step 2 – Department Manager

The Department Manager will review the facts with the Team Member and the Supervisor. A response to the Team Member's concern will be provided, whenever possible, not more than seven (7) calendar days after receipt of a written appeal. If still not satisfied, the non-Supervisory, non-introductory Team Member may request a Review Conference with the property Director of Human Resources or designee. This request must be in writing, and submitted within seven (7) calendar days from the date of the Step 2 decision.

## Step 3 – Review Conference

Following the Team Member's written request for a Review Conference, the Team Member's Supervisor will be notified. The Review Conference will be scheduled within seven (7) calendar days of receipt of the "Team Member Review Request" form. The Review Conference participants are: the Team Member, his or her immediate Supervisor and the Director of Human Resources or designee. The Conference will be an informal meeting where each participant will discuss the Team Member's issue, and the Director of Human Resources or designee will make a final determination.

The Director of Human Resources or designee will document his or her decision to which the Team Member may provide a written response. The Director of Human Resources or designee will not change Station Casino's rules or policy. Rather, the Director of Human Resources or designee will decide whether Station Casino's policy was interpreted and applied correctly and fairly.

If the Team Member is not satisfied with the Director of Human Resources' or designee's determination in the Review Conference, the non-Supervisory, non-introductory Team Member may appeal the decision to either the General Manager, or to the Team Member Council, depending upon the nature of the concern. The Team Member Council only considers disputes regarding termination of employment, whereas the General Manager considers disputes of any nature. This request must be in writing, and submitted within seven (7) calendar days of the counseling action or the last appeal, to the Director of Human Resources or designee.

## Step 4 – Final Appeal General Manager

Whenever possible, the General Manager will investigate, review and answer the concern, whenever possible, within seven (7) calendar days after receipt of a written appeal. The Team Member may request a conference to discuss the concern prior to receiving the written decision.

## Team Member Council Procedure
It is the policy of the Company to provide non-Supervisory, non-introductory Team Members with a procedure for bringing disputes regarding termination to the attention of management, and to resolve such issues fairly and promptly.

1. A Team Member Council hearing will be scheduled within seven (7) calendar days from the date the request is received if mutually convenient, or at the earliest mutually convenient time.

2. The Team Member Council hearing will be comprised of four individuals:
    a. The Director of Human Resources or designee, who will coordinate the selection of the Council, assist the parties in the preparation and presentation of their case and conduct the hearing proceedings. He/she will be a non-voting member of the Council.
    b. A member of management selected on a rotational basis (Note: The Team Member's Department Director may not serve on the Council).
    c. Two (2) non-Supervisory, non-introductory Team Members, selected at random by the Human Resources Director, from a department other than the department of the Team Member requesting the hearing. Team Members are eligible if they have completed one (1) year of continuous employment and have no corrective counseling on file in the past six (6) months. Team Members shall not be compelled to serve on the Council if they choose not to. Team Members will be paid at their hourly wage rate, tips/tokes not included, for their service on the Council

3. The Team Member Council will convene a hearing to which witnesses who have relevant information will be invited to attend and participate at the appropriate time during the hearing. Non-Team Members will not be allowed to attend a Team Member Council meeting.
   a. The Council will hear and review the evidence presented and, in closed session, will render a decision based on the evidence presented.

4. Decisions of the Team Member Council will be made by secret ballot. A simple majority vote will prevail. The decision will be final and binding on the Company.
   a. The Human Resources Director or designee will communicate the decision of the Council to the appropriate department and to the Team Member within 24 hours of the decision.

5. The Team Member Council is empowered to reinstate and award lost wages to the affected Team Member or uphold the action of the department. The Team Member Council may not increase the severity of the penalty.

6. Any Team Member reinstated under this procedure may be subject to a lesser corrective counseling step determined by Human Resources in accordance with the findings of the Team Member Council.

7. If a Team Member is reinstated, all corrective counseling action ninety (90) days following the reinstatement will be reviewed by Human Resources prior to the Team Member receiving it.

8. Team Members not entitled to the Council procedure are as follows:
   a. Company officers.
   b. All salaried Team Members.
   c. All Team Members designated as Supervisors and above.
   d. Team Members who are not designated as full-time or part-time status.
   e. Non-Supervisory Team Members who have not successfully completed the introductory period.

9. Team Member Council will not be heard for the following reasons:
   a. Team Members not eligible to work (i.e. work card, alien card expiration).
   b. Company's business decision to reorganize a department.
   c. Company's business decision to implement a reduction in force.
   d. Failure to pass post-accident or reasonable cause alcohol/substance testing.
   e. Action or conduct that is the subject of litigation or an administrative proceeding instituted by the affected Team Member(s), or otherwise involving the Company.

**Popularity –** Before Sunset Station opened in 1997, more than 35,000 people applied for 1,800 positions at the hotel/casino's employment offices - conveniently located in a neighborhood shopping center, the Galleria Mall, in Henderson, Nevada.

**Service –** Boulder Station was the first Las Vegas business to bring guests the convenience of Kids Quest, a quality leader in providing child care services in high traffic establishments. Kids Quest offers its guests toy-filled play areas, creative activities, challenging physical courses and the latest interactive media. Parents receive a beeper, so they can be reached immediately if the need arises.

**Volume –** The State of Texas is known for being big. Its namesake, Texas Station does business in a big way as well. In an average year at Texas: GRA's make up 148,920 beds! The Texas Café serves 55,000 gallons of coffee! Austin's Steakhouse uses an acre of Rosemary to garnish 52,000 New York steaks!



# SAFETY

## Safety Policy

The Company considers the safety of our Team Members and Guests to be of utmost importance in our operation. Accordingly, all Team Members are expected to practice safe work habits on a daily basis by:

1. Giving precedence to safe procedures over expediency and shortcuts.
2. Using required protective gear and equipment supplied by the Company.
3. Reporting immediately, and if possible, correcting any hazardous condition as soon as possible.
4. Complying with the Company and/or department safety rules.

Team Members must report all accidents involving Company equipment, property, products or personnel to their immediate Supervisors as soon as possible, but no later than 24-hours or by the end of that Team Member's scheduled shift.

**Safety is everyone's responsibility.**

## Reporting on-the-job Accidents

If you are injured on-the-job, you are required to immediately notify your Supervisor first, you will then be assisted to security to file a report (C-1). You will be requested to submit to a post-accident drug test. If necessary, unless your injury is life or limb threatening, you will be escorted by Security to our medical provider.

Team Members who are involved in workplace accidents will be tested after any event that involves any of the following circumstances:

a. A Team Member injury sustained as a result of an accident including but not limited to requiring medical attention;
b. Following a job-related accident including but not limited to requiring attention at a medical facility;
c. Where a Team Member is the direct cause of an injury to another Team Member including but not limited to requiring medical attention;
d. Where a Team Member is directly responsible for an injury to a hotel guest or any other person including but not limited to requiring medical attention and/or significant property damage to Company and/or guest property (damage assessment is determined at management discretion on a case-by-case basis);
e. At the time of reporting any incident/injury or if a Team Member submits a late report of injury.

**Failure to report your incident promptly may result in delay or denial of any benefits you would otherwise be eligible for.**

## Team Member Safety Rules

The following safety guidelines should be followed to ensure a safe working environment.

1. "HORSEPLAY" on Company property or while on duty is prohibited and could result in termination.
2. When picking up broken glass or sharp objects, use a broom and dustpan; do not use your hands.
3. Report and, if possible, correct any hazard or hazardous condition as soon as possible.
4. Use designated Team Member entry and exit doors at all times while on duty.
5. Report faulty equipment to your Supervisor as soon as possible.
6. Wear recommended protective clothes and shoes that are non-skid or have a slip resistant sole.
7. Company provided personal protective equipment should be worn at all times when specified areas and/or operations are identified.
8. Do not block hallways or exits with equipment or materials.
9. Use proper safety guards and shields while working with power equipment and machinery.
10. Proper lifting techniques must be used at all times. If the item is too bulky or heavy, get assistance.
11. Do not perform any jobs/tasks without proper training.
12. Team Members must notify a Supervisor if they are taking prescription medications that may affect work performance or safety.
13. **All accidents, no matter how slight, must be reported to your Supervisor immediately and no later than a 24-hour period.**
14. Be sure to use the right tools for the job.

Safety rules are not limited to the above. These rules go hand-in-hand with general Hotel/Casino and Department rules.

## In Case of a Fire

If you see smoke, someone reports a fire, or you see flames, remain calm and do the following:

1. Activate the nearest fire alarm pull station and/or call Security and report the location of the fire and what is burning.
2. If the fire is out of control, alert and assist Guests and fellow Team Members in leaving the area, securing all doors behind you.
3. Fight fires only if they are small enough to contain with an extinguisher.
4. NEVER put your personal safety at risk.
5. Use the nearest stairwell for the safest exit. **Never use an elevator during a fire.**
6. Report immediately to your department's designated safe zone.

## In Case of an Emergency

Notify Security or call the operator.

Each facility has an established procedure for both handling fires and evacuating any areas that might be in danger. DO NOT PANIC. If a Supervisor is available, follow his/her instructions. If a Supervisor is not available follow the directions of a uniformed security officer or a member of the Fire Department.

For any emergency, remain calm and explain the situation and location when calling Security or the operator. Make sure the person on the other end of the line acknowledges the information before you hang up.

## IMPORTANT...

While we believe in our policies, Company management reserves the right to change these policies in accordance with changing laws and/or with our own management philosophy. We do not intend to confer legal or contractual rights by publishing this Safety policy.

Team Members are not authorized to make any statement to you to the contrary.



# THANK YOU!

**Thank you for becoming part of the Station Casinos Team and for reading and understanding your handbook. By following the policies, practices and procedures outlined within, you can be prepared to go *"Beyond the Best"!* Our best wishes for your success!**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

## ACKNOWLEDGEMENT

I have received my copy of the Company Team Member Handbook, which outlines the policies, practices and benefit guidelines of the Company. I have read and fully understand the information contained in this Handbook. I understand violations of the policies, procedures and rules of conduct may result in corrective counseling up to and including termination. The policies and procedures contained in this Handbook shall remain in effect unless the Company advises me, in advance, of a change.

**Team Member Signature:**

_____

**Print Name:**

_____

**Date:**_____ **SS#:**_____

45



# THANK YOU!

**Thank you for becoming part of the Station Casinos Team and for reading and understanding your handbook. By following the policies, practices and procedures outlined within, you can be prepared to go *"Beyond the Best"!* Our best wishes for your success!**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

## ACKNOWLEDGEMENT

I have received my copy of the Company Team Member Handbook, which outlines the policies, practices and benefit guidelines of the Company. I have read and fully understand the information contained in this Handbook. I understand violations of the policies, procedures and rules of conduct may result in corrective counseling up to and including termination. The policies and procedures contained in this Handbook shall remain in effect unless the Company advises me, in advance, of a change.

**Team Member Signature:**

_____

**Print Name:**

_____

**Date:**_____**SS#:**_____

# EXHIBIT C

## *Consent to Join*

# EXHIBIT C

JOIN
Mark R. Thierman, Nev. Bar No. 8285
mark@thiermanbuck.com
Joshua D. Buck, Nev. Bar No. 12187
josh@thiermanbuck.com
Leah L. Jones, Nev. Bar No. 13161
leah@thiermanbuck.com
THIERMAN BUCK LLP
7287 Lakeside Drive
Reno, Nevada 89511
Tel. (775) 284-1500
Fax. (775) 703-5027

Christian Gabroy, Nev. Bar No. 8805
GABROY LAW OFFICES
christian@gabroy.com
170 S. Green Valley Pkwy
Henderson, NV 89012
Tel. (702) 259-7777
Fax. (702) 259-7704

Charles A. Jones, Nev. Bar No. 6698
caj@joneslawfirm.com
JONES LAW FIRM
9585 Prototype Court, Suite B
Reno, NV 89521
Tel. (775) 853-6440
Fax. (775) 853-6445

*Attorneys for Plaintiff*

### DISTRICT COURT
### CLARK COUNTY, NEVADA

| | |
|---|---|
| ARTHUR F. COYNE., on behalf of himself and all others similarly situated, | Case No.: |
| | Dept. No.: |
| Plaintiff, | |
| vs. | **CONSENT TO JOIN** |
| STATION CASINOS LLC, a Nevada Limited Liability Company, RED ROCK RESORTS, INC., a Delaware corporation, and DOES 1 through 50, inclusive, | |
| Defendant(s). | |

THIERMAN BUCK LLP
7287 Lakeside Drive
Reno, NV 89511
(775) 284-1500 Fax (775) 703-5027
Email info@thiermanbuck.com www.thiermanbuck.com

Pursuant to the Fair Labor Standards Act, 29 U.S.C. § 216(b), the undersigned hereby gives my consent in writing to become a party plaintiff against my Employer, Former Employer, and/or any and all its affiliated entities identified below. I authorize the filing of a copy of this consent form in Court. I further consent to join this and/or any subsequent or amended suit against the same or related defendant for wage and hour violations.

Dated this _16_ day of _SEPTEMBER_, 2016

Name: _ARTHUR F. COYNE_
(Please Print)

Signature: _Arthur F. Coyne_

Employer: STATION CASINOS

THIERMAN BUCK LLP
7287 Lakeside Drive
Reno, NV 89511
(775) 284-1500 Fax (775) 703-5027
Email info@thiermanbuck.com; www.thiermanbuck.com

- 1 -
CONSENT TO JOIN

**IAFD**
Mark R. Thierman, Bar No. 8285
Joshua D. Buck, Bar No. 12187
Leah L. Jones, Bar No. 13161
THIERMAN BUCK, LLP
7287 Lakeside Dr.
Reno, NV  89511
Tel: 775-284-1500
Fax: 775-5027

## DISTRICT COURT

## CLARK COUNTY, NEVADA

ARTHUR F. COYNE, on behalf of herself
and all others similarly situated,

                Plaintiff(s),

        -vs-

STATION CASINOS, LLC a Nevada
Limited Liability Company, RED ROCK
RESORTS, INC. a Delaware Corporation,
and DOES 1 through 50, inclusive,

            Defendant(s).

CASE NO.  \_\_\_\_\_

DEPT. NO.  \_\_\_\_\_

### INITIAL APPEARANCE FEE DISCLOSURE (NRS CHAPTER 19)

Pursuant to NRS Chapter 19, as amended by Senate Bill 106, filing fees are

submitted for parties appearing in the above entitled action as indicated below:

| New Complaint Fee | 1st Appearance Fee |
|---|---|
| ☐ $1530 ☐ $520 ☐ $299 ☒ $270.00 | ☐ $1483.00 ☐ $473.00 ☐ $223.00 |

Name: Arthur F. Coyne

| | |
|---|---|
| | ☐ $30 |
| | ☐ $30 |
| | ☐ $30 |

Initial Appearance Fee Disclosure/11/10/2016

☐ $30

☐ Total of Continuation Sheet Attached                    ☐ $_____

TOTAL REMITTED: (Required)              Total Paid          $   270.00

DATED this 10th day of November, 2016.

/s/ Mark R. Thierman_____
Mark R. Thierman

Electronically Filed
11/15/2016 09:19:06 AM

**CLERK OF THE COURT**

DMJT
Mark R. Thierman, Nev. Bar No. 8285
mark@thiermanbuck.com
Joshua D. Buck, Nev. Bar No. 12187
josh@thiermanbuck.com
Leah L. Jones, Nev. Bar No. 13161
leah@thiermanbuck.com
THIERMAN BUCK LLP
7287 Lakeside Drive
Reno, Nevada 89511
Tel. (775) 284-1500
Fax. (775) 703-5027

Christian Gabroy, Nev. Bar No. 8805
GABROY LAW OFFICES
christian@gabroy.com
170 S. Green Valley Pkwy
Henderson, NV 89012
Tel. (702) 259-7777
Fax. (702) 259-7704

Charles A. Jones, Nev. Bar No. 6698
caj@joneslawfirm.com
JONES LAW FIRM
9585 Prototype Court, Suite B
Reno, NV 89521
Tel. (775) 853-6440
Fax. (775) 853-6445

*Attorneys for Plaintiff*

THIERMAN BUCK LLP
7287 Lakeside Drive
Reno, NV 89511
(775) 284-1500 Fax (775) 703-5027
Email info@thiermanbuck.com www.thiermanbuck.com

**DISTRICT COURT**
**CLARK COUNTY, NEVADA**

| | |
|---|---|
| ARTHUR F. COYNE., on behalf of himself and all others similarly situated, | Case No.: A-16-746526-C |
| Plaintiff, | Dept. No.: XV |
| vs. | **DEMAND FOR JURY TRIAL** |
| STATION CASINOS LLC, a Nevada Limited Liability Company, RED ROCK RESORTS, INC., a Delaware corporation, and DOES 1 through 50, inclusive, | |
| Defendants. | |

- 1 -
DEMAND FOR JURY TRIAL

1    COMES NOW Plaintiff ARTHUR F. COYNE hereby demands trial by a jury of the

2    above-captioned matter pursuant to NRCP 38.

3

4    DATED: November 15, 2016                    Respectfully Submitted,

5                                                 **THIERMAN BUCK LLP**

6

7                                                 /s/ *Mark R. Thierman*
                                                 Mark R. Thierman
8                                                 Joshua D. Buck
                                                 Leah L. Jones
9
                                                 Attorneys for Plaintiff
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

THIERMAN BUCK LLP
7287 Lakeside Drive
Reno, NV 89511
(775) 284-1500 Fax (775) 703-5027
Email info@thiermanbuck.com www.thiermanbuck.com

IN THE .EIGHTH JUDICIAL DISTRICT COURT
IN AND FOR THE COUNTY OF CLARK

Electronically Filed
12/12/2016 03:24:48 PM

ARTHUR F. COYNE, ON BEHALF OF HIMSELF AND
ALL OTHERS SIMILARLY SITUATED,
        Plaintiff(s),

    VS.

STATION CASINOS LLC, A NEVADA LIMITED
LIABILITY COMPANY; ET AL,
        Defendant(s).

CASE NO:   A-16-746526-C

CLERK OF THE COURT

## Declaration of Service

STATE OF NEVADA
COUNTY OF CLARK    ss.

ROGER PAYNE R -038800, being duly sworn says: That at all times herein Affiant was and is a citizen of the United States, over 18 years of age, and not a party to nor interested in the proceedings in which this Affidavit is made.

That Affiant received copy(ies) of the SUMMONS-CIVIL; COLLECTIVE AND CLASS ACTION COMPLAINT; DEMAND FOR JURY TRIAL On 12/1/2016 and served the same on 12/1/2016 at 12:50 PM by delivery and leaving a copy with:

By then and there personally delivering a true and correct copy of the documents into the hands of and leaving with CHRISTY ARAUJO whose title is LEGAL ASSISTANT.

Served on behalf of RED ROCK RESORTS, INC., A DELAWARE CORPORATION

Service Address: 1505 S Pavilion Center Dr , Las Vegas, NV 891351403

A description of CHRISTY ARAUJO is as follows

| Gender | Color of Skin/Race | Hair | Age | Height | Weight |
|---|---|---|---|---|---|
| Female | HISPANIC | BLACK | 25-30 | 5'6" | 160 LBS. |

Pursuant to NRS 239B.030 this document does not contain the social security number of any person.

Affiant does hereby affirm under penalty of perjury under the law of the State of Nevada that the foregoing is true and correct.
Executed on: 12/2/2016
by ROGER PAYNE R -038800

No notary is required per NRS 53.045

X _____
ROGER PAYNE R -038800
Registration:
Reno Carson Messenger Service, Inc #322
185 Martin St.
Reno, NV 89509
(775) 322-2424
www.renocarson.com





Order#: R3612 NVPRF411

1   SUMM
    Mark R. Thierman, Nev. Bar No. 8285
    mark@thiermanbuck.com
2   Joshua D. Buck, Nev. Bar No. 12187
    josh@thiermanbuck.com
3   Leah L. Jones, Nev. Bar No. 13161
    leah@thiermanbuck.com
4   THIERMAN BUCK, LLP
    7287 Lakeside Drive
5   Reno, Nevada  89511
    Tel. (775) 284-1500
6   Fax. (775) 703-5027

7   *Attorneys for Plaintiff*

8

9                      **DISTRICT COURT**

10               **CLARK COUNTY, NEVADA**

11

12   ARTHUR F. COYNE., on behalf of
    himself and all others similarly situated,     Case No.: A-16-746526-C

13               Plaintiff,             Dept. No.: XV

14       vs.

15

16   STATION CASINOS LLC, a Nevada
    Limited Liability Company, RED ROCK
17   RESORTS, INC., a Delaware
    corporation, and DOES 1 through 50,
18   inclusive,

19              Defendants.

20

21                  **SUMMONS – CIVIL**
    **NOTICE! YOU HAVE BEEN SUED.  THE COURT MAY DECIDE AGAINST YOU**
22   **WITHOUT YOUR BEING HEARD UNLESS YOU RESPOND WITHIN 20 DAYS.**
    **READ THE INFORMATION BELOW.**
23

24   **TO THE DEFENDANT(S):** A civil Complaint has been filed by the Plaintiff(s) against

25   you for the relief set forth in the Complaint.

26      1. If you intend to defend this lawsuit, within 20 days after this Summons is served

27

28        on you, exclusive of the day of service, you must do the following:

RECEIVED

NOV 1 8 2016

CLERK OF THE COURT

- 1 -
SUMMONS

*Sidebar (left margin):* THIERMAN BUCK, LLP  7287 Lakeside Drive  Reno, NV 89511  (775) 284-1500 Fax (775) 703-5027  Email info@thiermanbuck.com; www.thiermanbuck.com

a. File with the Clerk of this Court, whose address is shown, a formal written response to the Complaint in accordance with the rules of the Court, with the appropriate filing fee.

b. Serve a copy of your response upon the attorney whose name and address is shown below.

2. Unless you respond, your default will be entered upon application of the Plaintiff(s) and failure to respond will result in a judgment of default against you for the relief demanded in the Complaint, which could result in the taking of money or property or other relief requested in the Complaint.

3. If you intend to seek the advice of an attorney in this matter, you should do so promptly so that your response may be filed on time.

4. The State of Nevada, its political subdivisions, agencies, officers, employees, board members, commission members and legislators each have 45 days after service of this Summons within which to file an Answer or other responsive pleading to the Complaint.

Submitted by:

Mark R. Thierman
Joshua D. Buck
Leah L. Jones
*Attorneys for Plaintiff*

STEVEN D. GRIERSON
CLERK OF COURT                          NOV 2 2 2016

By: _____
Deputy Clerk                    Date
                    DREANNA OWENS
Regional Justice Center
200 Lewis Avenue
Las Vegas, NV 89155

THIERMAN BUCK, LLP
7287 Lakeside Drive
Reno, NV 89511
(775) 284-1500 Fax (775) 703-5027
Email info@thiermanbuck.com; www.thiermanbuck.com

- 2 -
SUMMONS

Electronically Filed
12/12/2016 03:25:48 PM

IN THE .EIGHTH JUDICIAL DISTRICT COURT
IN AND FOR THE COUNTY OF CLARK

*[signature]*

**CLERK OF THE COURT**

ARTHUR F. COYNE., ON BEHALF OF HIMSELF AND
ALL OTHERS SIMILARLY SITUATED,

        Plaintiff(s),

        VS.

STATION CASINOS LLC, A NEVADA LIMITED
LIABILITY COMPANY; ET AL,

        Defendant(s),

CASE NO:   A-16-746526-C

### Declaration of Service

STATE OF NEVADA
COUNTY OF CLARK    ss.:

ROGER PAYNE R -038800, being duly sworn says: That at all times herein Affiant was and is a citizen of the United States, over 18 years of age, and not a party to nor interested in the proceedings in which this Affidavit is made.

That Affiant received copy(ies) of the SUMMONS-CIVIL; COLLECTIVE AND CLASS ACTION COMPLAINT; DEMAND FOR JURY TRIAL On 12/1/2016 and served the same on 12/1/2016 at 12:50 PM by delivery and leaving a copy with:

By then and there personally delivering a true and correct copy of the documents into the hands of and leaving with CHRISTY ARAUJO whose title is LEGAL ASSISTANT.

Served on behalf of STATION CASINOS LLC, A NEVADA LIMITED LIABILITY COMPANY

Service Address: 1505 S Pavilion Center Dr , Las Vegas, NV 891351403

A description of CHRISTY ARAUJO is as follows

| Gender | Color of Skin/Race | Hair | Age | Height | Weight |
|--------|--------------------|------|-----|--------|--------|
| Female | HISPANIC | BLACK | 25-30 | 5'6" | 160 LBS. |

Pursuant to NRS 239B.030 this document does not contain the social security number of any person.

Affiant does hereby affirm under penalty of perjury under the law of the State of Nevada that the foregoing is true and correct.
Executed on: 12/2/2016
by ROGER PAYNE R -038800

No notary is required per NRS 53.045

X    *[signature]*
ROGER PAYNE R -038800
Registration:
Reno Carson Messenger Service, Inc #322
185 Martin St.
Reno, NV 89509
(775) 322-2424
www.renocarson.com

ORIGINAL



Order#: R3611 NVPRF411

SUMM
Mark R. Thierman, Nev. Bar No. 8285
mark@thiermanbuck.com
Joshua D. Buck, Nev. Bar No. 12187
josh@thiermanbuck.com
Leah L. Jones, Nev. Bar No. 13161
leah@thiermanbuck.com
THIERMAN BUCK, LLP
7287 Lakeside Drive
Reno, Nevada 89511
Tel. (775) 284-1500
Fax. (775) 703-5027

*Attorneys for Plaintiff*

# DISTRICT COURT

# CLARK COUNTY, NEVADA

| | |
|---|---|
| ARTHUR F. COYNE., on behalf of himself and all others similarly situated, | Case No.: A-16-746526-C |
| Plaintiff, | Dept. No.: XV |
| vs. | |
| STATION CASINOS LLC, a Nevada Limited Liability Company, RED ROCK RESORTS, INC., a Delaware corporation, and DOES 1 through 50, inclusive, | |
| Defendants. | |

## SUMMONS – CIVIL

**NOTICE! YOU HAVE BEEN SUED. THE COURT MAY DECIDE AGAINST YOU WITHOUT YOUR BEING HEARD UNLESS YOU RESPOND WITHIN 20 DAYS. READ THE INFORMATION BELOW.**

**TO THE DEFENDANT(S):** A civil Complaint has been filed by the Plaintiff(s) against you for the relief set forth in the Complaint.

1. If you intend to defend this lawsuit, within 20 days after this Summons is served

    on you, exclusive of the day of service, you must do the following:

RECEIVED

NOV 1 8 2016

CLERK OF THE COURT

THIERMAN BUCK, LLP
7287 Lakeside Drive
Reno, NV 89511
(775) 284-1500 Fax (775) 703-5027
Email info@thiermanbuck.com; www.thiermanbuck.com

THIERMAN BUCK, LLP
7287 Lakeside Drive
Reno, NV 89511
(775) 284-1500 Fax (775) 703-5027
Email info@thiermanbuck.com; www.thiermanbuck.com

    a. File with the Clerk of this Court, whose address is shown, a formal written response to the Complaint in accordance with the rules of the Court, with the appropriate filing fee.

    b. Serve a copy of your response upon the attorney whose name and address is shown below.

2. Unless you respond, your default will be entered upon application of the Plaintiff(s) and failure to respond will result in a judgment of default against you for the relief demanded in the Complaint, which could result in the taking of money or property or other relief requested in the Complaint.

3. If you intend to seek the advice of an attorney in this matter, you should do so promptly so that your response may be filed on time.

4. The State of Nevada, its political subdivisions, agencies, officers, employees, board members, commission members and legislators each have 45 days after service of this Summons within which to file an Answer or other responsive pleading to the Complaint.

Submitted by:

_____

Mark R. Thierman
Joshua D. Buck
Leah L. Jones
*Attorneys for Plaintiff*

STEVEN D. GRIERSON
CLERK OF COURT

NOV 2 2 2016

By: _____
Deputy Clerk                              Date

DREANNA OWENS
Regional Justice Center
200 Lewis Avenue
Las Vegas, NV 89155

- 2 -
SUMMONS

# EXHIBIT B

# EXHIBIT B

LAWRENCE J. SEMENZA, III, ESQ., Bar No. 7174
Email: ljs@skrlawyers.com
CHRISTOPHER D. KIRCHER, ESQ., Bar No. 11176
Email: cdk@skrlawyers.com
JARROD L. RICKARD, ESQ., Bar No. 10203
Email: jlr@skrlawyers.com
SEMENZA KIRCHER RICKARD
10161 Park Run Drive, Suite 150
Las Vegas, Nevada 89145
Telephone:  (702) 835-6803
Facsimile:   (702) 920-8669

LUANNE SACKS (*pro hac vice* application to be filed)
Email: lsacks@srclaw.com
ROBERT B. BADER (*pro hac vice* application to be filed)
Email: rbader@srclaw.com
SACKS, RICKETTS & CASE LLP
177 Post Street, Suite 650
San Francisco, CA 94108
Telephone:  (415)549-0580
Facsimile:   (415)549-0640

*Attorneys for Defendants*
*Station Casinos LLC and Red Rock Resorts, Inc.*

**DISTRICT COURT**

**CLARK COUNTY, NEVADA**

| | |
|---|---|
| ARTHUR F. COYNE, on behalf of himself and all others similarly situated, <br><br> Plaintiff, <br><br> vs. <br><br> STATION CASINOS LLC., a Nevada Limited Liability Company, RED ROCK RESORTS, INC., a Delaware corporation, and DOES 1 through 50, inclusive, <br>               Defendants. | Case No.: A-16-746526-C <br><br> Dept. No.: XV <br><br> **DEFENDANTS' NOTICE OF FILING OF NOTICE OF REMOVAL OF ACTION TO UNITED STATES DISTRICT COURT, DISTRICT OF NEVADA** |

<u>**NOTICE OF FILING OF NOTICE OF REMOVAL**</u>

TO THE CLERK OF THE ABOVE-ENTITLED COURT, THE PARTIES, AND ALL ATTORNEYS OF RECORD:

Semenza, Kircher, Rickard
10161 Park Run Drive, Suite 150
Las Vegas, Nevada 89145
Telephone: (702) 835-6803

1

PLEASE TAKE NOTICE that on December 21, 2016, Defendants Station Casinos LLC and Red Rock Resorts, Inc. (collectively, "Defendants") filed in the United States District Court of the District of Nevada, a Notice of Removal of the above-captioned action from this Court.

A copy of the Notice of Removal, without exhibits, is attached to this Notice as **Exhibit A**, and is served and filed herewith.

PLEASE TAKE FURTHER NOTICE that pursuant to 28 U.S.C. Section 1446(d), the matter may proceed no further in the above-captioned Court unless and until the case is remanded.

DATED this 21st day of December, 2016.

SEMENZA KIRCHER RICKARD

*/s/ Lawrence J. Semenza, III*
Lawrence J. Semenza, III, Bar No. 7174
Christopher D. Kircher, Bar No. 11176
Jarrod L. Rickard, Esq., Bar No. 10203
10161 Park Run Dr., Ste. 150
Las Vegas, Nevada 89145

Luanne Sacks (*pro hac vice* application to be filed)
Robert B. Bader (*pro hac vice* application to be filed)
SACKS, RICKETTS & CASE LLP
177 Post Street, Suite 650
San Francisco, CA 94108

*Attorneys for Defendants*
*Station Casinos LLC and Red Rock Resorts, Inc.*

Semenza, Kircher, Rickard
10161 Park Run Drive, Suite 150
Las Vegas, Nevada 89145
Telephone: (702) 835-6803

2

## CERTIFICATE OF SERVICE

Pursuant to Nev. R. Civ. P. 5(b) and NEFCR 9, I am employed by the law firm of SEMENZA KIRCHER RICKARD in Clark County. I am over the age of 18 and not a party to this action. My business address is 10161 Park Run Dr., Ste. 150, Las Vegas, Nevada 89145.

On the 21st day of December, 2016, I served the document(s), described as:

**DEFENDANTS' NOTICE OF FILING OF NOTICE OF REMOVAL OF ACTION TO UNITED STATES DISTRICT COURT, DISTRICT OF NEVADA**

☒   by sending the ☐ original ☒ a true copy thereof

☒  a.  via **ECF System** *(You must attach the "Notice of Electronic Filing", or list all persons and addresses and attach additional paper if necessary)*

| Thierman Buck, LLP | | |
|---|---|---|
| | **Contact** | **Email** |
| | Tamara Toles | tamara@thiermanbuck.com |
| | Thierman Buck, LLP | info@thiermanbuck.com |

☐  b.  **BY U.S. MAIL OVERNIGHT.** I deposited such envelope in the mail at Las Vegas, Nevada. The envelope(s) were mailed with postage thereon fully prepaid. I am readily familiar with SEMENZA KIRCHER RICKARD'S practice of collection and processing correspondence for mailing. Under that practice, documents are deposited with the U.S. Postal Service on the same day which is stated in the proof of service, with postage fully prepaid at Las Vegas, Nevada in the ordinary course of business. I am aware that on motion of party served, service is presumed invalid if the postal cancellation date or postage meter date is more than one day after the date stated in this proof of service.

☐  c.  **BY PERSONAL SERVICE.**

☐  d.  **BY DIRECT EMAIL.**

☐  e.  **BY FACSIMILE TRANSMISSION.**

**I declare under penalty of perjury that the foregoing is true and correct.**

*/s/ Jennifer A. Bidwell*
An Employee of SEMENZA KIRCHER RICKARD

\

Semenza, Kircher, Rickard
10161 Park Run Drive, Suite 150
Las Vegas, Nevada 89145
Telephone: (702) 835-6803